UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ORION HEALTHCORP, INC[1]. | : | Case No. 18-71748 (AST) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------

|  |  |  |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY | : |  |
| AS LIQUIDATING TRUSTEE OF ORION | : | Adv. Pro. No. 20-08051 (AST) |
| HEALTHCORP, INC., ET AL., | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ELENA SARTISON; 2 RIVER TERRACE | : |  |
| APARTMENT 12J, LLC; CLODAGH BOWYER | : |  |
| GREENE A/K/A CLODAGH BOWYER; | : |  |
| ELLIOTT GREENE, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

------------------------------------------

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT, 2 RIVER TERRACE APARTMENT 12J, LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    FACTUAL BACKGROUND.........................................................................4

    A.    Defendant's Failure to Respond to the Complaint....................................4

    B.    Defendant's Objection To The Motion.....................................................6

III.    ARGUMENT................................................................................................7

    A.    Legal Standard .......................................................................................7

    B.    Defendant Proffers No Explanation For Not Responding To The
          Complaint Other Than The Assertion It No Longer Occupied The
          Condominium .........................................................................................9

    C.    On Objection To Set Aside A Motion For Default or Default Judgment,
          Defendant Must Submit Evidence Of A Meritorious Defense Which
          Defendant Has Failed To Do. ................................................................11

          1.    The Defense That The Transfer Of The Real Property Was In
                  Satisfaction Of An Undisclosed Debt Owed To A Third Party
                  Corporation Controlled By Parmar Or To Benefit Parmar, Even If
                  Properly Documented, Would Consitute An Improper Triangular
                  Set-Off And Fail As A Matter Of Law ......................................12

          2.    The Ordinary Course of Business Defense Has No Application to
                  Fraudulent Coveyance or Turnover causes of Action................................15

          3.    The Complaint Was Filed Well Within The 6 Year Statute Of
                  Limitations ...............................................................................15

    D.    Leaving The Property In The Custody And Control Of Defendant
          (Parmar) Would Prejudice Creditors Of The Estate As It Would Provide
          Opportunity For Fraud, Collusion And Would Result In The Complete
          Loss Of A Major Asset .........................................................................16

IV.    CONCLUSION...........................................................................................18

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*4 L. King*,
  503 B.R. 239, 553.04 (15th ed. 1987)............................................................................ 14

*Bank of Kuwait v. Rafidain Bank,*
  15 F.3d 238, 244(2nd Cir. 1994)................................................................................... 11

*BMO Harris Bank N.A. v. Mobius Bus. Sols., LLC*,
  3:17-CV-01037(BKS)(DEP), 2018 WL 3862682, at *2 (N.D.N.Y. Aug. 14, 2018) ... 8, 11

*Briggs Ave LLC v. Ins. Corp. of Hannover*,
  05 CIV.4212(GEL), 2006 WL 1517606, at *5 (S.D.N.Y. May 30, 2006) ...................... 10

*Byrnes v. Yeats Constr. Mgmt., Inc.,*
  12 CV 05355NSRLMS, 2017 WL 4045484, at *6 (S.D.N.Y. Sept. 11, 2017) ................. 9

*Cedeno v. Wimbledon Bldg. Corp.*,
  615 N.Y.S.2d 40, 40 (2d Dep't 1994) ............................................................................. 9

*Davis v. Musler*,
  713 F.2d 907, 912 (2d Cir. 1983)..................................................................................... 8

*Enron Oil Corp. v. Diakuhara*,
  10 F.3d 90, 96 (2d Cir. 1993).................................................................................... 8, 11

*Gucci America, Inc. v. Gold Center Jewelry*,
  158 F.3d 631, 635 (2d Cir. 1998)................................................................................... 11

*Hritz v. Woma Corp.*,
  732 F.2d 1178, 1181 (3d. Cir. 1984).............................................................................. 8

*In re Bennett Funding Group, Inc.*,
  146 F.3d 136, 138-39 (2d Cir. 1998). ........................................................................... 13

*In re Cartridge Television, Inc.*,
  535 F.2d 1388, 1391 (2d Cir. 1976)............................................................................... 17

*In re Evatt*,
  112 B.R. 405 (Bankr.W.D. Okla. 1989), aff'd, 112 B.R. 417 (W.D.Okla.1990).............. 14

*In re Johnson*,
  136 B.R. 306 (Bankr. M.D. Ga. 1991)............................................................................ 14

*In re Jones*,
  2016 Bankr. LEXIS 992, *19 (Bankr. W.D.N.Y. 2016).................................................. 17

*In re Lehman Brothers Holdings, Inc.*,
  433 B.R. 101, 107 (Bankr. S.D.N.Y., 2010) ............................................................. 13, 14

*In re Lowery*,
  398 B.R. 512, 516 (Bankr. E.D.N.Y. 2008)..................................................................... 18

*In re SemCrude*,
    399 B.R. 388, 399 (Bankr. D. Del. 2009) ...................................................................... 14

*In re Staffieri*,
    2012 Bankr. Lexis 2460, *5 (ED NY, 2012) .................................................................... 15

*In re Winnett*,
    7 B.R. 7 (Bankr.E.D.Cal., 1989) ..................................................................................... 14

*Information Sys. & Networks Corp. v. United States*,
    994 F.2d 792, 796 (Fed. Cir. 1993) ................................................................................... 8

*Ins. Co. of N. Am. V. NGC Settlement Trust* (*In re Nat'l Gypsum Co*),
    118 F.3d 1056, 1070 n.21, (5th Cir. 1997) ..................................................................... 17

*Lippe v. Bairnco Corp.*,
    225 B.R. 846, (S.D. NY, 1998) ....................................................................................... 16

*Meehan v. Snow*,
    652 F.2d 274, 277 (2d Cir. 1981) ..................................................................................... 8

*New York v. Green*,
    420 F.3d 99, 109 (2d Cir. 2005) ........................................................................... 12, 17, 18

*RE Cmty. Holdings II, Inc. v. eCullet, Inc.*,
    2016 U.S. Dist. LEXIS 139589, at *10 (D.N.J. Oct. 7, 2016) .......................................... 8

*RLS Assocs., LLC. v. United Bank of Kuwait PLC.*,
    No. 01-cv-1290, 2002 WL 122927, at *3, 2012 U.S. Dist. LEXIS 1371 (S.D.N.Y.
    Jan. 29, 2002) ................................................................................................................... 8

*S.E.C. v. McNulty*,
    137 F.3d 732, 738 (2d Cir.1998) .................................................................................. 9, 12

*Schoen v. Martin*,
    187 A.D.2d 253, 589 N.Y.S.2d 443, 444 (1st Dep't 1992) ............................................ 16

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
    374 F.3d 158, 166 (2d Cir. 2004) .................................................................................. 9, 11

*United States v. $55,518.05 in U.S. Currency*,
    728 F.2d 192, 195 (3d Cir. 1984). ..................................................................................... 8

*WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*,
    840 F.2d 996, 1011-12 (1st Cir. 1988) ........................................................................... 14

<u>Statutes</u>

11 U.S.C. §553 ...................................................................................................................... 13

11 U.S.C. §553(a) .................................................................................................................. 14

11 USC §546 .......................................................................................................................... 16

11 USC §547(c)(2) ................................................................................................................. 15

Fed. R. Civ. P. 55(a) ................................................................................................ 7

Fed. R. Civ. P. 55(c) ........................................................................................... 1, 7, 8

N.Y. B.C.L. § 304(b) ............................................................................................... 9

N.Y. B.C.L. § 304 .................................................................................................... 9

N.Y. C.P.L.R. § 311(a) ........................................................................................... 9

N.Y. Debt. & Cred. Law § 203(g) ...................................................................... 2, 15

N.Y. Debt. & Cred. Law § 213(1) .................................................................... 15, 16

N.Y. Debt. & Cred. Law § 213(1)(8) ................................................................ 2, 15

N.Y. Debt. & Cred. Law § 276 ............................................................................. 15

DOCS_LA:333451.8 65004/003

Plaintiff Howard M. Ehrenberg, Trustee ("Plaintiff") respectfully submits this reply, in response to *Objection to Motion for Entry of Default Judgment Against Defendant 2 River Terrace Apartment 12J, LLC* [Adv. Docket No. 31] (the "Objection") filed by 2 River Terrace Apartment 12J, LLC ("Defendant") in further support of Plaintiff's *Motion for Entry of Default Judgment and for Entry of Default Judgment Against Defendant 2 River Terrace Apartment 12J, LLC* [Adv. Docket No. 21] (the "Motion").

## I. INTRODUCTION

1.       If ever there were a case for a default judgment to be entered notwithstanding the Defendant's belated attempt to appear after the default, this is the case.

2.       Defendant admits the concealment and diversion of funds of the Debtor in the amount of $5,450,000 to purchase a residential Condominium ("Condominium") unrelated to the operations of the Debtor. The Objection then makes admissions which support the allegations of fraud leveled by the Trustee in the Complaint: (a) the Debtor was a shell for the machinations of the chief executive officer, Paul Parmar ("Parmar"), (b) Parmar disregarded all corporate formalities and diverted monies out of the Debtor for his personal benefit and (c) as the "majority owner" and the "CEO" of the Debtor and as "manager" of the Defendant, the Debtor transferred title to the Condominium in accordance with Parmar's wishes to Defendant, a shell company, for no consideration from the transferee, Defendant.  The explanation in the Objection, that Parmar personally was owed monies and effectuated an off the books triangular set-off between his separately managed companies which he characterizes as a "complex web", is not a defense to a fraudulent conveyance action.  (Obj. pg. 19).

3.       As a general matter, while default judgments are not favored, Rule 55(c) mandates that entry of default be set aside only for "good cause," and courts evaluate whether

"good cause" exists by considering the following factors: (1) whether the default was willful; (2) whether the plaintiffs would be prejudiced by the denial of the motion for default judgment; and (3) whether there are any meritorious defenses to plaintiff's claims. A court is within its discretion to deny a motion to vacate [a default or default judgment] if it is persuaded that the default was willful and is unpersuaded that the defaulting party can establish a meritorious defense. The rationale:  if a defendant is unable to establish that it has a meritorious defense, it could not prevail at trial. Here, all these factors weigh heavily in favor of denying the default and entering the default judgment.

4.      The Objection offers no evidence of a defense, let alone a meritorious one. The Objection claims the Debtor received consideration - but no evidence is submitted of a legitimate debt owed by the Defendant. Even accepting the argument of counsel, a claim of a meritorious defense in this fact pattern is implausible. Triangular set-offs are not allowed in bankruptcy pursuant to Section 553 of the Code. Parmar's admitted diversion of Debtor's monies was not in satisfaction of a mutual debt owed between Debtor and Defendant rather it was, at best, money funneled to Defendant on account of a debt owed to a different third –party corporation. When given the opportunity, Parmar confirms the fraudulent conveyance was made for no consideration to the Debtor by the Defendant.[1]

5.      The record makes clear, service of the Complaint, Default and Default Judgment was not only made in accordance with the Federal Rules, but in accordance with New York corporate law. Defendant deftly side steps the issue of service by claiming it no longer occupies the Condominium unit so it could not be served. However, it is well settled that failure of a

---

[1] The  fall back defenses in the Objection of the ordinary business and statute of limitations defense are equally unsupported and without merit.

corporate defendant to update the New York Secretary of State with its correct service address is not grounds to set aside a default. The more interesting question, why when the Objection admits Defendant received the Motion For Default Judgment from its lawyers at Robinson Brog in September 2020, did Defendant ignore the Complaint served on the same Robinson Brog firm on March 16, 2020? The lack of a cognizable explanation is sufficient as a matter of law to find Defendant's conduct was "willful".

6.      Ultimately, Plaintiff and creditors have been delayed seven (7) months by Defendant and Parmar's gamesmanship. The Objection advocates a strategy of further delay "until the Parmar criminal case is determined". Parmar's request; allow the Condominium to remain in a perpetual state of default with the Residential Board, burgeoning debt ultimately to be borne by creditors of the estate, or risk the Condominium be sold at a Sheriff's Sale on November 19, 2020. The request is not reasonable.  Congress promulgated the bankruptcy laws to promote the prompt liquidation of each debtor's estate and the efficient resolution of claims as an integral purpose of the Bankruptcy Code.

7.      In sum, the record here is clear: Defendant was duly and properly served yet failed to timely respond to the Complaint without offering any legitimate excuse. Further, Defendant's Objection makes clear that there are no colorable defenses to the Complaint – only improper and vague references to off-balance sheet transactions, and triangular set-offs. The Objection is thus merely a bid to postpone the inevitable: a judgment in Plaintiffs' favor for the relief requested in the Complaint. On these facts, the Court can and should exercise its discretion to overrule the Objection and grant the Motion.[2]

---

[2]    Granting the Motion and entering the requested default judgment is actually to Defendant's benefit in this sense: The proposed form of default judgment appended to the Motion makes a determination only regarding ownership of the funds currently being held in escrow; it contains no award of prevailing party attorneys' fees.

## II. FACTUAL BACKGROUND

A.    **Defendant's Failure to Respond to the Complaint**

8.    On March 16, 2020, Plaintiff served the Complaint and the Summons on Defendant *2 River Terrace Apartment 12J, LLC,* three separate ways: (i) by first class and certified mail to Defendant at the address specified in the New York Secretary of State's records; (ii) by first class and certified mail to the property address; and (iii) by first class and certified mail to the law firm Robinson Brog, Attn: Phil Thomas, Esq., who incorporated the Defendant, previously represented Parmar and which firm is listed on the New York Tax Assessor's roll to receive notice on the property. *See* L. Canty Decl. ¶8.

9.    The deadline for Defendant to answer or otherwise respond to the Complaint was 30 days after the issuance of the Summons, *i.e.*, **April 15, 2020** (the "Answer Deadline"). *See* FED. R. BANKR. P. 7012; *see also* Summons, p.1 (notifying Defendant of 30-day deadline). See L. Canty Decl. ¶10.

10.    On March 18, 2020, Robinson Brog received the Summons and Complaint via Certified Mail, return receipt requested, and by US mail which was not returned. *See* L. Canty Decl. ¶8. On March 16, 2020, service was also made on all other defendants in this adversary proceeding via Certified Mail, Return Receipt Requested and First Class US Mail. *See* L. Canty Decl. ¶9.

11.    The tracking information evidenced a lapse in tracking service information between March 28, 2020 and May 2, 2020, for certified mail with respect to service to

---

If that judgment is entered, then Defendant will not be liable for Plaintiffs' attorneys' fees and will not be out-of-pocket any more than he already is. But if the Motion is denied and the parties proceed to litigate the case, then the prevailing party will be entitled to attorneys' fees under the Purchase Agreement. Thus, ending the matter now will save Defendant from ultimately paying both sides' legal fees.

Defendant, 2 River Terrace, Apartment 12J, New York, NY 10282. Plaintiff therefore sought to serve the New York Secretary of State directly. *See* L. Canty Decl. ¶8.

12.     On May 11, 2020, counsel for the Plaintiff requested a Supplemental Summons, but was unable to effect service within 7 days of the issuance of the Supplemental Summons as required by Fed. R. Bankr. P. 7004(e) due to the COVID-19 pandemic (the "Pandemic"). *See* L. Canty Decl. ¶11.

13.     On June 24, 2020, counsel for the Plaintiff requested a Second Supplemental Summons for purposes of service of process upon the New York Secretary of State (the "Secretary of State") as agent of a corporation or other business entity. On June 25, 2020, the Court issued the Second Supplemental Summons. Upon engaging a process server for such service, I was informed that due to the Pandemic, the Secretary of State would accept in person legal process by appointment only. *See* L. Canty Decl. ¶11. Unfortunately, service was unable to be timely made before expiration of the Second Supplemental Summons. See L. Canty Decl. ¶12.

14.     On July 7, 2020, counsel for the Plaintiff requested a Third Supplemental Summons for purposes of service of process upon the Secretary of State. On July 9, 2020, the Court issued the Third Supplemental Summons. On July 9, 2020, service of process was successfully made to the New York Secretary of State. *See* L. Canty Decl. ¶13.

15.     The Objection asserts the Condominium Unit was vacated by Defendant as of July 2018. Plaintiff has no knowledge of such event or whether it is accurate. However, on March 16, 2020, service of the Complaint and the Summons was made on Defendant *2 River Terrace Apartment 12J, LLC,* by US mail and was not returned. *See* L. Canty Decl. ¶8.

5

16.     On September 30, 2020, Plaintiff filed the *Motion for Entry of Default and For Entry of Default Judgment Against Defendant 2 River Terrace Apartment 12J, LLC.*

17.     The Objection claims that service of the *Motion for Entry of Default and For Entry of Default Judgment Against Defendant 2 River Terrace Apartment 12J, LLC.,* as served on Robinson Brog on September 30, 2020 by Federal Express, "was received by someone who could effectuate actual service upon Defendant". (Opposition pg. 9, fn. 6)

18.     On September 16, 2020, the Court's Initial Pretrial Conference scheduled for September 21, 2020 was adjourned to October 15, 2020. (Dkt no. 20) On October 15, 2020, the hearing went forward at which time no appearance was made by Defendant 2 River Terrace, Apt. 12J, LLC.

**B.      Defendant's Objection To The Motion**

19.     On October 26, 2020, Defendant filed the Objection to the Motion. (Dkt no. 31) The Objection is without supporting affidavits to explain who, how, when or where Defendant became aware of the Complaint. At no time has Defendant or counsel contacted Plaintiff, asked for an extension, or offered to appear and file an answer in this adversary. *See* J. *Nolan* Decl., ¶2.

20.     Substantively, the Objection never explains why Defendant did not respond to the Complaint, but posits three arguments that if it did, it would have a meritorious defense. First, Parmar, as opposed to the named Defendant, was owed a "legitimate debt" and the Transfer to Defendant was in consideration for a debt owed to Parmar or First United Health, a corporation that Parmar controlled. Second, the ordinary course of business defense applies to shelter such transfer. Third, the Complaint is barred by the statute of limitations. In support of these stated defenses, counsel for Defendant admits for the first time that Defendant 2 River Terrace

Apartment 12J, LLC is managed by Parmar[3], Parmar was an executive of the Debtor, CHT, the parent corporation of Orion Healthcorp., Parmar personally diverted 5.6 MM out of the Debtor's bank account to purchase the Condominium as either (a) satisfaction of his salary, or (b) in satisfaction of a loan to the Parmar-managed non-debtor entity. (Objection, fn. 9) The Objection does not address why Parmar concealed his identity or used the Debtor's credit cards to pay for the Condominium. (Motion, ¶37). Lastly, the Objection suggests Parmar was justified in not paying real property taxes, utilities and common charges and in not defending the State Court litigation which resulted in a judgment in excess of $200,000 against the Defendant by the Condominium Board as the Condominium Board wrongfully evicted Parmar from the Condominium in 2018.   The Objection asks the Court to delay the present case pending the outcome of the criminal trial pending in the District of New Jersey.

## III. ARGUMENT

### A.    Legal Standard

21.    As a general matter, default judgments are not favored. However, under Rule 55, a party defaults when he "has failed to plead or otherwise defend" the case at hand. Fed. R. Civ. P. 55(a).  Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Although the Rule does not define "good cause," "[i]n practice, courts apply the same set of factors" in deciding motions under both Rule 55(c) and Rule 60(b), which are "applied more rigorously in the case of default judgments" and more leniently in addressing entries of default. *RLS Assocs., LLC. v. United Bank of Kuwait PLC.*, No. 01-cv-1290, 2002 WL 122927, at *3, 2012 U.S. Dist. LEXIS 1371 (S.D.N.Y. Jan. 29, 2002). Under

---

[3]    Interestingly, the Objection never states if Parmar owns the Defendant, only that he manages Defendant.

Rule 55(c), the factors to be considered in deciding whether to relieve a party of a default are: (a) whether the default was willful, (b) whether setting it aside would prejudice the adversary, and (c) whether a meritorious defense is presented. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). These criteria must be applied keeping the Second Circuit's "strong preference for resolving disputes on the merits" in mind, but recognizing courts also "have an interest in expediting litigation, and abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *BMO Harris Bank N.A. v. Mobius Bus. Sols., LLC*, 3:17-CV-01037(BKS)(DEP), 2018 WL 3862682, at *2 (N.D.N.Y. Aug. 14, 2018).  At the end of the day, if the court <u>is persuaded the default was willful</u>, and <u>unpersuaded the Defendant has a meritorious defense</u>, the court can deny the opposition to vacate. [Emphasis added] Id.[4]

22.     On review, a district court will consider all of these factors. See *Information Sys. & Networks Corp. v. United States*, 994 F.2d 792, 796 (Fed. Cir. 1993) (noting that the majority rule is to consider all three factors). The granting of a default judgment is reviewed under an abuse of discretion standard. *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir. 1983). "[E]ntry of a default judgment is left primarily to the discretion of the [Court]." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998)) (citations omitted).

---

[4]     In sister courts, the existence of a meritorious defense is "the threshold issue" in the analysis.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d. Cir. 1984).  If the Court finds "that Defendant has not established that it has a meritorious defense, the Court need not reach the remaining two factors." *RE Cmty. Holdings II, Inc. v. eCullet, Inc.*, 2016 U.S. Dist. LEXIS 139589, at *10 (D.N.J. Oct. 7, 2016); *see also Vincent's Pizza Park, Inc. v. B&C Pizza*, 2012 U.S. Dist. LEXIS 63371, at *20 (W.D. Pa. May 3, 2012) ("[I]f a defendant is unable to establish that it could assert a meritorious defense, that defendant is not entitled to have a default judgment set aside."). This is because "without a meritorious defense [defendant] could not win at trial," and "[t]herefore, there would be no point in setting aside the default judgment." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

**B.**     **Defendant Proffers No Explanation For Not Responding To The Complaint Other Than The Assertion It No Longer Occupied The Condominium**

23.     According to the Objection, by serving the address <u>Defendant provided</u> to the New York Secretary of State, Plaintiff "deliberately tailored service in a fashion to avoid providing actual notice". [Obj. pg. 8] Without offering any evidence, Defendant claims Plaintiff knew the Defendant no longer occupied the premises. As such, service was improper. The statement evidences a lack of understanding of service requirements under New York and Federal Law.

24.     N.Y. B.C.L. § 304 provides, in relevant part, the secretary of state shall be the agent of every domestic corporation upon whom process against the corporation may be served. No domestic corporation may be formed or authorized to do business in New York unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." N.Y. B.C.L. § 304(b). N.Y. C.P.L.R. § 311(a) provides personal service upon a corporation shall be made by delivering the summons upon any domestic corporation to an agent authorized by appointment or by law to receive service. *Byrnes v. Yeats Constr. Mgmt., Inc.,* 12 CV 05355NSRLMS, 2017 WL 4045484, at *6 (S.D.N.Y. Sept. 11, 2017). "It is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process. It is for this reason that service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether such process ultimately reaches the corporate defendant." *Cedeno v. Wimbledon Bldg. Corp*., 615 N.Y.S.2d 40, 40 (2d Dep't 1994) (citations omitted)). A defendant's failure to update their address with the Secretary of State does not create a "reasonable excuse" for purposes of vacating a default judgment. *Briggs Ave LLC v. Ins. Corp. of Hannover*, 05 CIV.4212(GEL), 2006 WL 1517606, at *5 (S.D.N.Y. May 30, 2006).

DOCS_LA:333451.8 65004/003

25.     As set forth above, Plaintiff served the Complaint and all pleadings to the
Condominium address, the address Defendant listed with the Secretary of State, and to Robinson
Brog, lawyers' Parmar utilized to acquire the property, who incorporated the Defendant, and who
were listed as receiving notice for property assessments issued by the County of New York.
Service of the Complaint and the Motion was proper.

26.     One must actively search the Objection to determine <u>where,</u> <u>when</u> and <u>how</u>
Defendant learned of the litigation. Buried at page 9, the Objection states "although Plaintiff did
again serve the Secretary of State, this time a copy (the Motion For Default Judgment) was also
served via Federal Express upon the law firm of Robinson Brog…, although roundabout did
have a chance of being received by some person who could effectuate service on Defendant,"
[Obj. pg. 9]. The admission, service to Robinson Brog <u>did result</u> in actual notice to Defendant
and/or Parmar. However, Robinson Brog was served with the Complaint on March 16, 2020 by
US mail and certified mail return receipt requested. *See* L. Canty Decl. ¶8. Further, service of the
Complaint to Defendant was not returned via US mail.  *See* L. Canty Decl. ¶8 As such, only one
credible explanation exists. Defendant was aware of the Complaint in March 2020 and willfully
ignored the Complaint to delay the litigation-the same strategy employed in the Objection. "It is
well established in the Second Circuit that where a party fails to act with diligence, he will be
unable to demonstrate that his conduct constituted excusable neglect… and the default need not
be set aside." *In re Staffieri*, 2012 Bankr. Lexis 2460, *5 (ED NY, 2012)  "[A] finding of bad
faith is not a necessary predicate to concluding that a defendant acted willfully. . . . [I]t is
sufficient that the defendant defaulted deliberately." *Gucci America, Inc. v. Gold Center Jewelry*,
158 F.3d 631, 635 (2d Cir. 1998). A court, when faced with a lack of explanation or evidence to
explain the default, can reasonably conclude that the defendant made the deliberate decision to

default. *BMO Harris Bank N.A. v. Mobius Bus. Sols., LLC*, 3:17-CV-01037(BKS)(DEP), 2018 WL 3862682, at *2 (N.D.N.Y. Aug. 14, 2018). The Objection makes no effort to explain the default though Defendant was properly served. The default was deliberate.

27.     The back-up explanation provided in the Objection for not responding, a prior court order froze "the status of Defendant 2 River Terrace's real property". (Obj. pg. 6) Defendant knew the government withdrew its *in rem complaint* with respect to the Condominium. (Objection, fn. 4) The Summons made clear Defendant was being sued: "YOU ARE SUMMONED and required to submit a motion or answer to the complaint, which is attached to this summons, to the Clerk of the Bankruptcy Court within 30 days". A defendant's mistaken belief that it enjoys a defense to not responding does not preclude a finding of willfulness. *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244(2nd Cir. 1994). This factor weighs heavily in favor of enforcing the default.

**C.      On Objection To Set Aside A Motion For Default or Default Judgment, Defendant Must Submit Evidence Of A Meritorious Defense Which Defendant Has Failed To Do.**

28.     "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support [their] defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). See also *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (affirming district court's denial of motion to vacate default judgment where the defendants "failed to present proof even minimally sufficient to show the existence of a meritorious defense.") (emphasis added) (internal quotations omitted); see also *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) See *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (affirming district court's denial of motion to vacate default judgment where defendants failed to submit to the District Court even a single affidavit or any other evidence supporting their asserted defenses and therefore, "Defendants' assertions amounted to little more

than conclusory denials."). As a threshold matter, Defendant fails to attach a single affidavit or document in support of a credible defense. Counsel for Defendant offers 3 explanations each which can be easily dismissed.

1.     **The Defense That The Transfer Of The Real Property Was In Satisfaction Of An Undisclosed Debt Owed To A Third Party Corporation Controlled By Parmar Or To Benefit Parmar, Even If Properly Documented, Would Consitute An Improper Triangular Set-Off And Fail As A Matter Of Law**

29.     The Default Motion submits the sworn Affidavit of Dan Jones, approved by this Court, who investigated the Debtors books and records and concluded "no evidence exists of any debt owed by the Debtor or any legitimate business dealings conducted between the Debtors and Defendant 2 River Terrace Apartment 12J, LLC. (See Order, Dkt. No. 262; Case 8-18-71748-ast) There is a lack of any documentation, invoices or journal entries to support a stated business purpose for the acquisition of the Condominium Unit." [Affidavit of D. Jones, Dkt 21, ¶6] The Objection admits this fact, that <u>no debt existed between the Debtor, transferor and the Defendant, transferee</u>. Any defense under 11 U.S.C. §548 or NY State fraudulent conveyance law that Defendant "the transferee or oblige gave value to the debtor" in exchange for the transfer is foreclosed as the Objection confirms Defendant gave no value to the transferee. The defense fails as a matter of law.

30.     Next the Objection asserts, "First United Health, a Parmar-managed entity that is not one of the Debtors herein, provided 13 million dollars in cash infusions to CHT/Orion". [Objection, fn. 9] The argument fails for the same reason as set forth above. Parmar claims the Debtor incurred a debt from First United Health but the Debtor transferred title valued at 5.45 MM to Defendant 2 River Terrace Apt. 12J, LLC apparently on behalf of First United Health

12

since it would enrich the same majority shareholder, Parmar.[5] Parmar asserts what is in essence a triangular set-off. Triangular set-offs are not, and never have been, allowed under the Bankruptcy Code.

31.     Section 553 of the Bankruptcy Code permits the set-off of mutual debts that arose before the commencement of the case. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138-39 (2d Cir. 1998). The "Bankruptcy Code does not establish an independent right to set-off, but section 553 does preserve any right of set-off that may exist under applicable non-bankruptcy law." *In re Lehman Brothers Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y., 2010). Section 553 applies "whenever a creditor seeks to exercise any purported set-off right-including one created by contract-in a case under the Bankruptcy Code." However, Section 553 imposes "additional restrictions on a creditor seeking set-off *that must be met to impose a set-off against a debtor in bankruptcy*." To be eligible for set-off under section 553, "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual." Section 553 sets forth in pertinent part:

> "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…." *In re SemCrude*, 399 B.R. 388, 399.

The authorities are also clear that debts are considered "mutual" only when they are due to and from the same persons in the same capacity. Put another way, mutuality requires that each party must own his claim in his own right severally, with the right to collect in his own name against

---

[5]  The statement made is without documentation such as a 1099, W-2, or Board Resolution which would allow the Court to assess the color of such claim. Parmar never states he is a shareholder of Defendant, just a "manager".

the debtor in his own right and severally. Because of the mutuality requirement in section 553(a), courts have routinely held that triangular set-offs are impermissible in bankruptcy. Moreover, because each corporation is a separate entity from its sister corporations, a subsidiary's debt may not be set-off against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances. Allowing a creditor to offset a debt it owed to one corporation against funds owed to it by another corporation-even a wholly-owned subsidiary- would thus constitute an improper triangular set-off under the Code. *In re SemCrude*, 399 B.R. 388 at 393-394 (Bankr. D. Del. 2009). See *In re Lehman Bros.*, 458 B.R. 134, 2011 Bankr. LEXIS 3714 (Bankr. SD NY, 2011) (the court agrees with the *SemCrude* court — triangular set-off is not (and never was) permitted under the Bankruptcy Code).

32.     Although the Bankruptcy Code does not define "mutuality," a majority of courts that consider the issue have held: debts are mutual only if they are due to and from the same persons in the same capacity. It is also widely accepted that "mutuality is strictly construed against the party seeking set-off. The effect of this narrow construction is that 'each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'" Id. at 396[6]

33.     Even if there were documents offered to the Court to document the claim of a legitimate debt owed to Defendant, the incoherent explanation proffered in the Objection that

---

[6] "It is hornbook law that to be considered mutual, (a) 'debts must be in the same right, (b) between the same parties, and (c) standing in the same capacity.'" *WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1011-12 (1st Cir. 1988), quoting *4 L. King*, 503 B.R. 239, 553.04 (15th ed. 1987).  Accord, *In re Johnson*, 136 B.R. 306 (Bankr. M.D. Ga. 1991); *In re Evatt*, 112 B.R. 405 (Bankr.W.D. Okla. 1989), aff'd, 112 B.R. 417 (W.D.Okla.1990); *In re Winnett*, 97 B.R. 7 (Bankr.E.D.Cal., 1989).

Parmar or First United Health were owed the debt is an improper triangular set-off and invalid as a matter of law.[7]

       **2.**       **The Ordinary Course of Business Defense Has No Application to Fraudulent Coveyance or Turnover causes of Action**

34.      Plaintiff makes the argument the ordinary course of business defense somehow shields the Transfer. The ordinary course of business defense is not a meritorious defense to a fraudulent conveyance, declaratory relief or turnover cause of action and easily dismissed. See 11 USC §547(c)(2).

       **3.**       **The Complaint Was Filed Well Within The 6 Year Statute Of Limitations**

35.      The Opposition contends that the fraudulent conveyance claims are barred by the two year statute of limitations set forth in 11 USC 548. However, the Complaint and the Motion in particular (Motion, ¶32) cite to New York statutory fraudulent transfer law. DCL Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DEBT. & CRED. LAW § 276. A claim for actual fraud pursuant to N.Y. Debt. & Cred. Law § 276 is governed by a limitations period of six (6) years from the date of the alleged fraud or two (2) years from the date of discovery, <u>whichever is later</u>. N.Y. Debt. & Cred. Law §§ 213(8), 203(g). Constructive fraud claims are governed by a six year statute of limitations. N.Y. Debt. & Cred. Law § 213(1). *Lippe v. Bairnco Corp.*, 225 B.R. 846, (S.D. NY, 1998); ("Actions for constructive -- rather than actual -- fraud have long been subject to the catch-all limitations period of CPLR § 213(1));

---

[7] It is the Defendant's duty to state facts that are not vague and/or inconsistent in moving to be relieved from default or excused on relief. *In re Staffieri*, 2012 Bankr. Lexis 2460, *5 (ED NY, 2012)

*Schoen v. Martin*, 187 A.D.2d 253, 589 N.Y.S.2d 443, 444 (1st Dep't 1992) ("The 'two years from the date of discovery' provision extending the statute of limitations beyond six years from the date of the fraudulent act does not apply to constructive fraud."). The statute of limitations governing the fraud claim is six years, not two. It is not disputed the diversion of the Debtor's monies occurred and the property was acquired in February 2016. The Debtor filed the petition on March 16, 2018, two years and one month after the improper transfer. The Complaint was filed by the Trustee on March 14, 2020 within the two year statute of limitation outlined in 11 USC §546 and well within the statute of limitations outlined by N.Y. Debt. & Cred. Law for both intentional and constructive fraud. All three defenses supported only by argument of counsel fail to establish a colorable defense.

**D.**   **Leaving The Property In The Custody And Control Of Defendant (Parmar) Would Prejudice Creditors Of The Estate As It Would Provide Opportunity For Fraud, Collusion And Would Result In The Complete Loss Of A Major Asset**

36.     A court may grant a motion for default judgment even if the record does not strongly support a finding of prejudice, so long as the moving party establishes willful default and the absence of any meritorious defense." *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 348 (S.D.N.Y. 2011). Indeed, even "[a]n absence of prejudice to the non-defaulting party would not in itself entitle the defaulting party to relief from the judgment." *McNulty*, 137 F.3d at 738. However, the threat of prejudice in the present circumstances is so great, this factor weighs heavily toward the denial of the Objection and entry of the default judgment.

37.     Prejudice to the Plaintiff arises where relief from a default judgment "may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (emphasis added) (internal quotations omitted). A

paramount objective of bankruptcy proceedings is the expeditious administration of the estate. *In re Cartridge Television, Inc.*, 535 F.2d 1388, 1391 (2d Cir. 1976) (quotation marks omitted); see also *Ins. Co. of N. Am. V. NGC Settlement Trust* (*In re Nat'l Gypsum Co*), 118 F.3d 1056, 1070 n.21, (5th Cir. 1997) ("Efficient resolution of claims is an integral purpose of the Bankruptcy Code."). Congress promulgated the Bankruptcy laws to promote the prompt liquidation of each debtor's estate.

38.      The Objection seeks to bring the bankruptcy case to a grinding halt based on unsubstantiated claims by Parmar that the "status quo" must be maintained because of a "complex web of allegations determinable in the criminal case". The allegation seeks to thwart the expeditious distribution of the proceeds to bona fide general creditors of the Debtor. Even more compelling absent Court action there could be a complete loss of a valuable asset. Defendant has intentionally defaulted on the real property not paying taxes and common charges such that creditors of the bankruptcy estate risk losing the asset by virtue of the scheduled Sheriff's Sale.  Remarkably, the Objection claims the Condominium as Parmar's property but does not deny Parmar misappropriated credit cards of the Debtor to pay for expenses of his property (Motion, ¶19). Parmar amassed a $200,000 debt to the Residential Board which is now upwards of $390,000. The Motion went beyond the allegations in the Complaint to introduce admissible evidence of Parmar's history of diverting assets of the Debtor for his own personal use. (Motion, ¶36) The Bankruptcy Court need not turn a blind-eye to signals evidencing bad faith and the improper diversion of assets. See *In re Jones*, 2016 Bankr. LEXIS 992, *19 (Bankr. W.D.N.Y. 2016) [The public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors." *In re Lowery*, 398 B.R. 512, 516 (Bankr. E.D.N.Y. 2008). The Court will not turn a

17

blind eye to the signals pointing toward bad faith]. Leaving the property in the custody and control of Defendant or Parmar provides greater opportunity for fraud and collusion. *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) This factor weighs heavily in favor of enforcing the default and default judgment.

## IV. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein and in the Motion, Plaintiffs respectfully request that the Court overrule the Objection, enter a default judgment (substantially in the form of the proposed judgment), and grant such other and further relief as is just and proper.

Dated: New York, New York
      November 3, 2020

          */s/ Jeffrey P. Nolan*

Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

Counsel for the Plaintiff,
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., *et al*.