Hearing Date:  To Be Determined by the Court.
Objection Deadline: December 28, 2020 at 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | Adv. Pro. No. 20-08051 (AST) |
|  | : |  |
|  | : | [Separate Statement of Facts, |
| Plaintiff, | : | Declarations of Dan Jones and J. |
|  | : | Nolan, and Request For Judicial |
| v. | : | Notice Filed Concurrently Herewith] |
|  | : |  |
| ELENA SARTISON; 2 RIVER TERRACE APARTMENT 12J, LLC; CLODAGH BOWYER GREENE A/K/A CLODAGH BOWYER; ELLIOTT GREENE, | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |

------------------------------------------

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
DEFENDANT 2 RIVER TERRACE APARTMENT 12J, LLC**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...........................................................................................1

STANDING .................................................................................................................3

PROCEDURAL STATEMENT ........................................................................................4

STATEMENT OF FACTS ...............................................................................................5

    A.    Purchase of the Condominium Unit..........................................................5

    B.    Defendant Conducted No Business With The Debtor, Was Owed No Debt By the Debtor, Yet Received Property of the Debtor worth 5.6 MM ...................6

    C.    The Debtor Was Utilized To Pay For The Upkeep Of The Condominium Unit After the Fraudulent Transfer ...................................................................7

    D.    Defendant Failed To Pay For Ongoing Taxes, Utilities and Common Area Costs Since February 2018 Resulting in A Judgment in Favor of The Residential Board in Excess of $200,000................................................................................7

    E.    Parmar's Diversion of the Debtor's Funds to Cover His Outstanding Personal Loans:.......................................................................................................8

    F.    The Debtors Recorded Consecutive Losses Each Year From 2015 To The Petition Date And Had Negative Cumulative Earnings of -$133,398,156, As of December 31, 2017...............................................................................................8

LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION.............................10

    A.    The Transfer Violates NY Debt & Cred L § 273(a) As A Judgment Creditor Existed Before The Transfer And The Transfer Had The Effect Of Moving Monies Out Of The Estate To Deprive Existing Creditors.......................................11

    B.    The Transfer Of Title To The Defendant Was Also An Intentionally Fraudulent Transfer Pursuant To NY Debt & Cred L § 273, 276................................13

    C.    Transfer Of Title To The Defendant Was A Constructively Fraudulent Transfer As The Transfer Was Not Made In Good Faith Or For Fair Consideration.............18

    D.    The Debtor Was Insolvent In December 2015 And February 2016, Or Engaged In Or Was About To Engage In A Business Transaction For Which Its Remaining Property Constitutes Unreasonably Small Capital. ...............................20

    E.    The Court Should Declare the Condominium Unit As Property Of The Liquidating Trust And Order Turnover of Title And The Property To The Plaintiff ........................................................................................................23

F.      Plaintiff Is Entitled To A Monetary Award To Satisfy The Encumbrance Against The Condominium Unit, Charges the Debtor Paid While the Unit Was Misappropriated As Well As An Award Of Its Attorney's Fees. ............................25

G.      The Award of Attorney's Fees In Favor of The Plaintiff Is Warranted In the Present Circumstances. ...........................................................................................27

CONCLUSION .......................................................................................................................28

# TABLE OF AUTHORITIES

## Cases

## Cases

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ....................................................... 20

*Am. Panel Tec v Hyrise, Inc.*,
  31 AD3d 586, 587, 819 N.Y.S.2d 768 (2d Dept 2006) ............................................................. 29

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..................................................... 20

*Begier v. IRS*,
  96 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) ............................................................ 23

*Bennett v. Rodman & English, Inc.*,
  2 F. Supp. 355 (E.D.N.Y.) ........................................................................................................ 29

*Berner Trucking, Inc. v Brown*,
  281 AD2d 924, 925, 722 N.Y.S.2d 656 (1st Dept 2001) .......................................................... 28

*Cadle Co. v. Newhouse*,
  No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716,
  (S.D.N.Y. Aug. 16, 2002) ..................................................................................... 21, 35, 36

*Carey v. Crescenzi*,
  923 F.2d 18, 20 (2d Cir. 1991) ................................................................................................. 36

*CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. P 'ship*,
  25 A.D.3d 301, 302, 808 N.Y.S.2d 187 (1st Dept 2006) .......................................................... 28

*Dixie Yarns, Inc. v. Forman*,
   906 F. Supp. 929 (S.D.N.Y. 1995) .......................................................................................... 21

*First Cmty. Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.)*
  2009 Bankr. LEXIS 2325 (BNKR. E.D.V.A, 2009) ................................................................. 33

*Geltzer v. Soshkin (In re Brizinova)*,
  588 B.R. 311 (Bankr. EDNY, 2018) ....................................................................................... 34

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
  2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, (S.D.N.Y. Aug. 20, 2000) .......................... 30

*In re Actrade Fin. Techs. Ltd.*,
  337 B.R. at 809) ..................................................................................................................... 24

*In re Christian & Porter Aluminum Co.*,
  584 F.2d 326 (9th Cir. 1978) ................................................................................................... 29

*In re Community Hospital of Rockland County*,
  5 B.R. 7 (Bankr. S.D.N.Y. 1979) ............................................................................................. 33

*In re F.H.L., Inc.*,
  91 B.R. 288 (Bkrtcy NJ, 1988) ................................................................................................ 32

*In re Imperial Corp.,*
   1997 U.S. Dist. LEXIS 20942, *37 (S.D. Cal. 1997) ...................................................22

*In re Ir. Bank Resolution Corp.,*
   559 B.R. 627, 643 (Bankr. DE, 2016) ........................................................................33

*In re Langley,*
   20 B.R. 595, 599-600 (Bankr. N.D. Ind. 1983) ..........................................................33

*In re MarketXT. Holdings Corp.,*
   376 B.R. at 403 ...........................................................................................................23

*Keller v. Keller (In re Keller),*
   185 B.R. 796 (9th Cir. BAP 1995).............................................................................23

*Korea Deposit Ins. Corp. v. Mina Jung,*
   59 Misc. 3d 442 (Sup Ct, New York County, 2017) ...................................................23

*Kramer v. Mahia (In re Khan),*
   2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016).............................................30

*Laco X-Ray Sys., Inc. v. Fingerhut,*
   88 A.D.2d 425, 432; 453 NYS2d 757 (2d Dept. 1982) ..............................................27

*Lanik v. Smith (In re Cox Motor Express of Greensboro, Inc.),*
   2017 Bankr. LEXIS 233, 26 (Bkrtcy, MD NC, 2017)................................................31

*Lawson v. Ford Motor Co. (In re Roblin Indus.),*
   78 F.3d 30 (2nd Cir. 1996).........................................................................................30

*Lyman Commerce Solutions, Inc. v. Lung,*
   2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015 ...................................................21

*Machado v A. Canterpass*, LLC,
    115 AD3d 652, 654, 981 N.Y.S.2d 758 (2d Dept 2014) ...........................................27

Manshul,
   2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866 ....................................................32

*Marine Midland Bank v. Murkoff,*
   120 A.D.2d 122, 508 N.Y.S.2d 17, 24 (N.Y. App. Div. 1986) ..................................35

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)...........................................20

*Mendelsohn v. Jacobowitz (In re Jacobs),*
   394 B.R. 646 (Bankr. E.D.N.Y. 2008).......................................................................23

*Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.,*
   226 A.D.2d 1056, 641 N.Y.S.2d 947, 948 (N.Y. App. Div. 1996) .............................35

*Mitchell v. Garrison Protective Servs., Inc.,*
   579 F. App'x 18 (2d Cir. 2014)..................................................................................21

*Mitchell v. Lyons Prof'l Servs., Inc.,*
   No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431,
   (E.D.N.Y. Sept. 1, 2013)............................................................................................21

*Moody v. Security Pacific Business Credit, Inc.*,
  971 F.2d 1056  (3rd Cir. 1992) ..................................................................................32

*Newman v. Tyberg (In re Steel Wheels Transp., LLC)*,
  2011 Bankr. LEXIS 4582, 14 (Bankr. D. N.J. 2011) ....................................................34

*P.A. Bldg. Co. v Silverman*,
  298 AD2d 327, 328, 750 N.Y.S.2d 13 (1st Dept 2002)................................................29

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, No. 11 Civ. 3489 (JMF),
  2014 U.S. Dist. LEXIS 16755, 2014 WL 516695, at *2 (S.D.N.Y. Feb. 10, 2014).....................35

*Salomon v. Kaiser (In re Kaiser)*,
  722 F.2d 1574 (2d Cir. 1983)......................................................................................24

*Shapiro v. Wilgus*,
  287 U.S. 348, 354, 53 S. Ct. 142, 77 L. Ed. 355 (1932).............................................23

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*,
  403 F.3d 43 (2d Cir. 2005)..........................................................................................27

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993)......................................................................................36

*Tronox Inc. v. Kerr McGee Corp.*, (*In re Tronox Inc.*)
   503 B.R. 239 (S.D.N.Y, 2013)....................................................................................24

*Tronox v. Anadarko Petroleum (In re Tronox Inc.)*,
  429 B.R. 73 (Bankr. S.D.N.Y. 2010)...........................................................................24

*United States v. Bushlow*,
  832 F. Supp. 574 (E.D.N.Y. 1993) ..............................................................................35

*United States v. McCombs*,
  30 F.3d 310 (2d Cir. 1994)..........................................................................................23

*Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*,
  016 N.Y. Misc. LEXIS 4805, (Supt Ct, 2016)............................................................28

## Statutes

11 U.S.C. §541.............................................................................................................33, 34

11 U.S.C. § 541(a)(1)........................................................................................................33

11 U.S.C. § 541(a)(3)........................................................................................................33

11 U.S.C. § 542(a) ............................................................................................................33

11 U.S.C. § 542, ...............................................................................................................32

11 U.S.C. § 544 .....................................................................................................22, 23, 37

11 U.S.C. § 544 (a) ...........................................................................................................22

11 U.S.C. § 544 (b) .....................................................................................................22, 23

11 U.S.C. § 547, ...............................................................................................................23

11 U.S.C. § 548.................................................................................................................23

11 U.S.C. § 550.................................................................................................................37

11 U.S.C. § 551.................................................................................................................22

11 U.S.C. § 101(10)(A).....................................................................................................13

11 U.S.C. § 101 §31(B)(ii)................................................................................................25

## Other Authorities

*4 Collier on Bankruptcy* P 67.33, at 514.1-14.2 (14th ed. 1978)......................................29

*5 Collier on Bankruptcy*, §542.01 (Richard Levin & Henry J. Sommer eds., 16 ed.).......................23

*5 Collier on Bankruptcy*, §542.03[1] (Richard Levin & Henry J. Sommer eds., 16 ed.) .................34

N.Y. Debt & Cred. Law § 270.............................................................................................13

N.Y. Debt & Cred. Law § 273(a)..................................................................................20, 21, 22

N.Y. Debt & Cred. Law § 271(1) ........................................................................................30

N.Y. Debt & Cred. Law § 272........................................................................................20, 28

N.Y. Debt & Cred. Law § 273...............................................................................21, 22, 27, 30

N.Y. Debt & Cred. Law § 274.......................................................................................22, 27, 32

N.Y. Debt & Cred. Law § 275.......................................................................................22, 27

N.Y. Debt & Cred. Law § 276...............................................................................11, 22, 23, 27

N.Y. Debt & Cred. Law § 276-a.........................................................................................36

## Rules

Fed R. Civ. Proc. 56.....................................................................................................10, 19

Fed. R. Bankr. P. 7056.......................................................................................................19

This Brief is filed pursuant to Fed R. Civ. Proc. 56(a) and (d), by Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., (the "Plaintiff" or the "Liquidating Trustee"), for the estates of the above-captioned debtors ("Plaintiff"), in support of Plaintiff's Motion For Summary Judgment Or In The Alternative, Summary Adjudication (the "Motion"), with supporting documents filed concurrently herewith as against Defendant 2 River Terrace, Apartment 12J, LLC (the "Defendant") only.

## SUMMARY OF ARGUMENT

1.        There are multiple independent basis for the Court to grant the present Motion avoiding the transfer of title to the real property located at 12 River Terrace, Apartment 12J, located in, New York, NY (the "Condominium Unit") to Defendant (the "Transfer").  The basis all stem from the same basic fact pattern; the CEO of the Debtor transferred millions of dollars from the Debtor in a non-business related transaction to the sellers and then transferred title to a third-party corporation which had no business dealings with the Debtor, was owed no debt by the Debtor, and proffered no consideration to the Debtor.  The Defendant was created and controlled by the CEO of the Debtor solely for the purpose to enrich himself.  The Transfer violates New York Debt and Creditor Laws *per se* and judgment is warranted.

2.        The additional undisputed facts supporting the Motion leave no doubt as to why the Transfer occurred and dispel any tortured rationale to come.  Paul Parmar ("Parmar"), the Debtor's CEO, instigated the Transfer after legitimate creditors recorded judgments against the Debtor.  Parmar utilized the Debtor to pay his personal debts and lived in the Condominium Unit until the Debtor stopped paying for it.  During this time, the Debtor had negative income in the

tens of millions of dollars, recorded losses for 2015, 2016 and 2017 and had no hope of returning to any sustainable business model.

3.　　Under New York Debt and Creditor Law ("DCL"), assuming a judgment creditor exists at the time of the transfer as it does in this case, the Transfer *per se* violates DCL §273-a, is fraudulent and the solvency or insolvency of the Debtor is irrelevant, the only remaining question being was "fair consideration" given. Defendant cannot establish "fair consideration" where a transfer was made to benefit an officer or insider and the Debtor is or later becomes insolvent. Similarly, pursuant to DCL §276, every conveyance made with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent without regard to solvency or addressing the issue of fair consideration. The Motion establishes the badges of fraud commonly associated with fraudulent transfers that raise an inference of fraudulent intent, i.e. to place the debtor's assets out of the reach of the Debtors' creditors. The burden shifts to Defendant to offer a credible explanation for the Transfer. The Transfer is also properly attacked without regard to the actual intent of the transferor –if the transfer is considered to have been made in constructive fraud of creditors. The Motion satisfies DCL §273-275 as the Transfer was made to a third-party corporation for no consideration to the Debtor while the Debtor was insolvent or doomed to failure. In fact, under DCL, the Debtor is presumed to be insolvent when an asset is given away for no value.

4.　　Lastly, the Motion submits undisputed facts to evidence the Transfer was made without good faith. Even after the Transfer, funds from the Debtor were utilized to pay for the Condominium Unit – an event inconsistent with the contention that title was transferred in good

faith to the Defendant or that it belonged to anyone other than the Debtor.  When the Debtor

stopped paying for the upkeep, Defendant was content to let the Condominium Unit languish,

default, and ultimately be subject to a judgment in New York State Court that now approaches

$400,000 in unpaid common charges and subjects the property to the threat of a Sheriff's Sale.

5.       The Motion meets its *prima facie* case to establish a fraudulent conveyance and

turnover of title and possession of the real property before the asset is further diminished or lost

altogether.

**STANDING**

6.       On March 16, 2018, each of the Debtors except New York Network Management,

LLC ("NYNM") filed a voluntary petition with the United States Bankruptcy Court for the

Eastern District of New York (the "Bankruptcy Court") under chapter 11 of the Bankruptcy

(Code and NYNM commenced its voluntary petition on July 5, 2018 (collectively, the

"Debtors").  The Debtors' cases are jointly administered for administrative purposes only

[Docket Nos. 34 and 381].

7.       On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy

Judge for the Eastern District of New York, entered an order (the "Confirmation Order") [Docket

No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

8.       The Plan provides, among other things, for the formation of the Liquidating Trust

and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in

the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to

pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

9.      The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action, of the Debtors as well as making distributions to creditors with Allowed claims.  (Plan, §6.3)  Bankruptcy Code § 101(10)(A) defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A); N.Y. DEBT. & CRED. LAW § 270.  Predicate creditor(s) existed as of the Petition Date for the Liquidating Trustee pursuit of the present adversary.[2]

## PROCEDURAL STATEMENT

10.     Plaintiff filed the complaint (the "Complaint") in this action on March 14, 2020 [Docket No. 1].  The Complaint sought to recover alleged fraudulent transfers under applicable provisions of the Bankruptcy Code and DCL and turnover of title to the Condominium Unit.

11.     On November 10, 2020, the Court conducted a hearing on Plaintiff's Motion for Default Judgment against Defendant.  The Motion for Default Judgment was denied as the issues presented were better addressed by the Court on summary judgment.  Defendant was ordered to file an Answer on or before November 24, 2020.

---

[2] See Case 8-18-71748: claim no. 10001, District Court judgment dated December 16, 2015, in the amount of 194,185 in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation; See Claim no. 3-1  Wells Fargo Financial Leasing, Inc., dated April 7, 2015 in the amount of $18,543.27;

12.     On November 16, 2020, the Court issued its Amended Scheduling Order and

Order Concerning Summary Judgment ("Amended Scheduling Order").  [Dkt No. 38]

13.     Pursuant to the Amended Scheduling Order, the Court set a briefing schedule and

set the matter for oral hearing, if any, on January 21, 2021 at 10:00 am.  [Dkt. No. 38]

## STATEMENT OF FACTS

14.     Based upon the Affidavits attached to the Motion, the documents submitted

herewith, the Request for Judicial Notice and the pleadings in this case, there is no genuine issue

concerning the following material facts:

A.     Purchase of the Condominium Unit

15.     The Debtors were a consolidated enterprise of several companies aggregated

through a series of acquisitions which operated in the healthcare sector primarily in revenue and

practice management for physician practices.  (See Separate Statement of Fact ("SSOF") #1)

16.     Defendant is an active Domestic Limited Liability Company formed under the

laws of the State of New York on December 23, 2015.  (See SSOF #2).

17.     The Debtor's Constellation Healthcare Technologies maintained a checking

account at Manufacturer's Trust Bank, account #-68132 ("M&T Bank Account").  (See SSOF

#3).

18.     On December 23, 2015, Parmar, the chief executive officer ("CEO") of the

Debtor CHT ("Parmar"), instructed Sam Zaharis, the chief financial officer ("CFO") of  Debtor

to transfer $545,000 by wire from the Debtor's M&T Bank account, to the account of Lustrin

Tetelman, LLP., attorneys for Clodagh Bowyer Greene and Elliott Greene (the "Sellers") (See SSOF #4).  Close of escrow was scheduled for February 19, 2016.

19.     On December 29, 2015, Parmar's instructed his identity be concealed from the published record by instructing that "Salil and Kiran Sharma" be reflected as the purchasers of the Condominium Unit (as evidenced in the email exchange dated between Parmar, Adam Greene, and Zaharis).  (See SSOF #6)

20.     On February 16, 2016, Robinson Brog forwarded the closing statement for the "Parmar Condo Purchase" indicating the closing funds needed to be in the Robinson Brog account before Friday February 19, 2016.  (See SSOF #7)

21.     On February 19, 2016, Parmar, instructed Zaharis to transfer $5,058,408.81 of the Debtor's monies out of the M&T bank Account to the Debtor's IOLA account at the firm of Robinson Brog.  (See SSOF ##7, 8)

22.     The $5,058,408 was placed directly into escrow in the form of a cashier's check. (See SSOF #8)

23.     Upon purchasing the Condominium Unit in 2016, Parmar occupied the unit with his girlfriend, Defendant Elaine Sartison.  (See SSOF #9).

B.     <u>Defendant Conducted No Business with the Debtor, Was Owed No Debt by the Debtor, Yet Received Property of the Debtor worth 5.6 MM</u>

24.     According to the books and records of the Debtor, Defendant performed no service and had no business dealings with the Debtor. (See SSOF #11)

25.     Parmar, as CEO of the Debtor, transferred property to Defendant, a corporation he manages. (See SSOF ##10, 12)

26.     The Debtor's books and records evidence no preexisting debt owed to the Defendant. (See SSOF #13)

27.     The Debtor's records evidence no antecedent debt satisfied as a result of the diversion of $5,603,408.81 in funds from the Debtor's M&T Bank Accounts.

C.     The Debtor Was Utilized To Pay For The Upkeep Of The Condominium Unit After the Fraudulent Transfer

28.      Defendant is managed solely by Paul Parmar.  (See SSOF #10)

29.     Douglas Elliman Property Management collected payments for common expenses associated with the Condominium Unit. (See SSOF #15)

30.     Parmar abused the Debtor's credit cards to pay not less than $68,247.19 for upkeep of the Condominium Unit. (See SSOF #16)

31.     Parmar's access to credit cards of the Debtor were unilaterally terminated. (See SSOF #17)

D.     Defendant Failed To Pay For Ongoing Taxes, Utilities and Common Area Costs Since February 2018 Resulting in A Judgment in Favor of the Residential Board in Excess of $200,000

32.     Defendant was in default under the covenants with the Residential Board by not paying for taxes, utilities and common charges from February 2018, forward.  (See SSOF #18)

33.     On September 20, 2019, the Residential Board of Managers ("RBM") entered judgment in the sum of $200,208.04, as against Defendant and the real property for failure to pay

the associated fees and costs for electricity, taxes, and assessments incurred by living in the Condominium Unit. (See SSOF #19)

34.    As of October 1, 2020, the Residential Board of Management ("RBM") is owed not less than $369,469.96, as Defendant or another has not paid the associated fees and costs for any month since February 1, 2018.  (See SSOF #20)

E.    Parmar's Diversion of the Debtor's Funds to Cover His Outstanding Personal Loans:

35.    In July, 2009, Parmar borrowed $600,000 from his neighbor Howard Schoor.  By 2013, Parmar was in default on the loan. (See SSOF #21)

36.    In January 2017, Parmar directed Zaharis to pay his personal debts to Schoor with monies from the Debtor despite the fact the Debtor had no monies to make payroll. (See SSOF #22)

37.    On May 20, 2017, Parmar and Zaharis conspired to and did create a fake vendor agreement, invoices and falsified receivables in order to make it appear that Schoor rendered services to the Debtor.  (See SSOF #23)

38.    As of February 2010, Parmar personally borrowed $1,000,000 from Mark Feuer ("Feuer").  Parmar was owed not less than $400,000 as of 2016.  (See SSOF #24)

39.    On February 7, 2017, at Parmar's direction, $900,000 of the Debtor's funds were wired to Feuer from the Debtor's IOLA account at Robinson Brog at least half of which paid back Parmar's personal loan.  (See SSOF #25)

F.    The Debtors Recorded Consecutive Losses Each Year From 2015 to the Petition Date and Had Negative Cumulative Earnings of -$133,398,156, As of December 31, 2017

40.     FTI Consulting, Inc. ("FTI") was appointed in September 2017 to conduct a forensic examination of the Debtors' business following questions raised as to CHT's financial condition.  (See SSOF # 26)

41.     Timothy J.  Dragelin served as the Debtors' CEO and CRO shortly after the resignation of executives Parmar, and termination of Sam Zaharis, and Ravi Chivukula on September 29, 2017, and through the filing of the Petition, restructuring and sale of the Debtors' assets. (See SSOF #27)

42.     According to the Debtors' records, on September, 16, 2015, the Debtor CHT acquired *Phoenix Health, LLC* for 14.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity.  (See SSOF #28)

43.     According to the Debtors' records, on September, 18, 2015, the Debtor CHT acquired *Northstar Acquisition, LLC* for 18.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity.  (See SSOF #29);

44.     The Debtor's filed an Amended US Corporation Income Tax Return for tax year ending 2015, restating revenue to evidence a net operating loss of -$11,392,467 for the year.  The Debtors' retained cumulative earnings, or Cumulative Income, was -94,135,177 as of December 31, 2015, (See SSOF #30)

45.     The Debtor's filed a US Corporation Income Tax Return for tax year ending 2016, evidencing a net operating loss for 2016 of -39,007,282.  (See SSOF #31) For 2016, the Debtors' retained cumulative earnings, or cumulative income, was -112,905,441, evidencing it again carried negative earnings and went further into debt year over year.  (See SSOF #31).

46.     On February 10, 2016, CHT acquired MDRX Medical Billing, LLC ("MDRX") for 28MM. (See SSOF #32)  MDRX had no assets, employees, conducted no business and was a sham transaction with fake revenue. (See SSOF #33)

47.     The Debtor's filed its US Corporation Income Tax Return for tax year ending 2017, stating a net income (loss) for 2017 of -$20,492,714.  (See SSOF #34) The Debtors' retained cumulative earnings, or Cumulative Income (loss), was -$133,398,156 as of December 31, 2017.

48.     On December 16, 2015, the Southern District Court of Texas issued a Judgment in the amount of $194,185, against the Debtors in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  The Judgment was filed as a proof of claim in Case 8-18-71748, and assigned claim no. 10001.  The filed claim remains unsatisfied.  (See SSOF #35)

## LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION

49.     Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary proceeding.  Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). However, once there is a showing of the absence of an issue of fact, the

opposing party must produce specific evidence that raises a genuine issue.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).  A fact is "material" if it might affect the outcome of the suit under the governing

substantive law, and "summary judgment will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986).

A.    **The Transfer Violates NY Debt & Cred L § 273(a) As A Judgment Creditor Existed**
      **Before The Transfer And The Transfer Had The Effect Of Moving Monies Out Of**
      **The Estate To Deprive Existing Creditors**

50.    Defendant claims in the Second Affirmative Defense, "Defendant 2 River

Terrace…..provided fair consideration for the purchase of the Apartment Unit " and "moreover,

at the time of the purchase of the Apartment Unit, the Debtors were solvent (Answer, Dkt No.

41, ¶32).   The Court need not address a determination of solvency if the Court finds a judgment

existed against the Debtors at the time of the Transfer and the judgment was left unsatisfied.

Under such circumstances the transfer per se violates §273-a, is fraudulent and the solvency or

insolvency of the Debtor is irrelevant.  At that juncture, the only remaining issue being, was "fair

consideration" provided for the Transfer.  N.Y. Debt. & Cred. Law § 272 defines "fair

consideration" for purposes of § 273-a.   § 273-a provides: "Every conveyance made without fair

consideration when the person making it is a defendant in an action for money damages or a

judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that

action without regard to the actual intent of the defendant if, after final judgment for the plaintiff,

the defendant fails to satisfy the judgment." *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015) citing to N.Y. DCL § 273-a (McKinney 2002). As noted by the court in *Lyman,* "Sections 273 and 273-a thus provide alternate theories of fraud: § 273 "applies to transfers that render a debtor insolvent, and the existence of an action or judgment is irrelevant," while § 273-a "applies where there is an action pending or a judgment already docketed, but there is no requirement that the transfer rendered the debtor insolvent." *Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at *5-6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) (emphasis added). In effect, § 273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency." *Mitchell v. Lyons Prof'l Servs., Inc*., No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at *3 (E.D.N.Y. Sept. 1, 2013) vacated and remanded on other grounds, *Mitchell v. Garrison Protective Servs., Inc*., 579 F. App'x 18 (2d Cir. 2014); see also *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938 (S.D.N.Y. 1995) ("a claimant under § 273-a need not demonstrate the insolvency of the judgment debtor.  It is sufficient to support the claim that the judgment has not been satisfied; and if, as here, it has not, the question of insolvency is irrelevant to the considerations at hand.")

51.    On December 16, 2015, a final judgment was issued against the Debtors in the United States District Court, For the Southern District of Texas in excess of $200,000. (See SSOF #35)  The proof of claim was filed in the Debtors' bankruptcy cases and remains unsatisfied. (See SSOF #35)  The federal court judgment is sufficient as a matter of law to satisfy the claim for intent to defraud under DCL§ 273-a.  Unless Defendant can establish the Debtor

received "fair consideration" from Defendant for the 5.6MM Transfer, judgment is proper in favor of Plaintiff as a matter of law.

B.    **The Transfer of Title to the Defendant Was Also an Intentionally Fraudulent Transfer Pursuant To NY Debt & Cred L § 273, 276**

52.    In its Third, and Fourth, and Sixth Claims for Relief as filed in its Complaint, the Plaintiff properly pleads : (a) to avoid the intentionally fraudulent and constructively fraudulent transfer (the "Transfer") of the Debtors' funds to Defendant totaling not less than $4,967,226.74, plus the "balance of the purchase prices should it be determined the Debtor's funds were utilized for the down payment" pursuant to 11 U.S.C. §§ 544, 548 and 550 and NY Debt & Cred L §§ 273-276, *et seq.*, or recover the value thereof, and preserve the Transfer for the benefit of the Debtors' estate pursuant to 11 U.S.C. § 551.   (See Affidavit of J. Nolan ¶2, Complaint, ¶¶33, 37) The down payment was $545,000. (See SSOF #4)

53.    Bankruptcy Code section 544 allows a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." Under section 544(b), a trustee may avoid transfers based on state fraudulent conveyance law.  *In re Imperial Corp*., 1997 U.S. Dist. LEXIS 20942, *37 (S.D. Cal. 1997). Subsections (a) and (b) of Code Section 544, sometimes referred to as the Trustee's "strong arm powers", perform very different functions but with the same goals: maximizing the estate and equalizing the distribution of a debtor's assets among creditors of the same class. *5 Collier on Bankruptcy*, §542.01 (Richard Levin & Henry J. Sommer eds., 16 ed.) The § 544 (b) requirement of a transfer of "an interest of the debtor in property," which is a phrase common to §§ 544(b), 547, and 548, refers to property that would have been part of the estate had it not been

transferred before bankruptcy. See, *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990); *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799 (9th Cir. BAP 1995).

54.     DCL Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL§ 276; *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 658 (Bankr. E.D.N.Y. 2008) (It is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven. *Id* citing to *In re MarketXT. Holdings Corp*., 376 B.R. 390 at 403 (citing *Shapiro v. Wilgus*, 287 U.S. 348, 354, 53 S. Ct. 142, 77 L. Ed. 355 (1932)). Intent to evade creditors amounts to a fraudulent conveyance regardless of insolvency.  *Korea Deposit Ins. Corp. v. Mina Jung*, 59 Misc. 3d 442, 449 (Sup Ct, New York County, 2017); *Elliott v. Elliott*, 365 F. Supp. 450, 498 (S.D.N.Y. 1973); See *United States v. McCombs*, 30 F.3d 310, 327-28 (2d Cir. 1994); (Under DCL § 276, a transfer made with actual intent to hinder, delay, or defraud present or future creditors is fraudulent as to such creditors, *regardless of whether the debtor receives fair consideration for its property*).[Emphasis added]  As such, if this Court finds the Transfer was conveyed with actual intent to hinder or delay creditors, the Transfer must be set aside without regards to the issue of fair consideration.

55.     Actual fraudulent intent is rarely susceptible to direct evidence and may be inferred from the circumstances surrounding the transaction.  As the Second Circuit explained:

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."

Courts in New York look to the badges of fraud commonly associated with fraudulent transfers that raise an inference of fraudulent intent *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). *See Tronox v. Anadarko Petroleum (In re Tronox Inc.)*, 429 B.R. 73, 95 (Bankr. S.D.N.Y. 2010) ("The existence of several badges of fraud can constitute clear and convincing evidence of actual intent." (quoting *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791 at 809)).

56.     Badges of fraud are not conclusive, but they help to focus the inquiry on the circumstances that suggest a conveyance was made with fraudulent intent, viz., with the purpose of placing a debtor's assets out of the reach of creditors.  See *Tronox Inc. v. Kerr McGee Corp.*, (*In re Tronox Inc.*)  503 B.R. 239, 282-283 (S.D.N.Y, 2013)

(i)     <u>The lack or inadequacy of consideration</u>

57.     Defendant is a single purpose LLC, created eight (8) weeks before the Transfer, solely for the single purpose to hold title to the Transfer for the Debtor's CEO 's private use and enjoyment.  The Debtor received no payment from Defendant for the 5.6 MM in Debtors' funds utilized to purchase the Condominium Unit. (See SSOF #14)  The Debtor conducted no business with Defendant, a third-party corporation.  (See SSOF #11)  The Debtor's books and records evidence no antecedent debt satisfied such that Defendant received 5.6 MM worth of property for no consideration. (See SSOF ##13, 14)   This factor weighs heavily in favor of a finding of a fraudulent conveyance.

(ii)     <u>The family, friendship or close associate relationship between the parties;</u>

58.     Elliott Greene, the Seller, is the brother of Mitchell Greene, the lawyer who represented Parmar and Defendant in the transaction and in general.  Adam Greene, another Robinson Brog lawyer, and nephew of the Seller, assisted Parmar to hide his identity in the transaction while at the same time facilitating the liquidation of the debtor's monies into a

transaction engineered to pass title to a limited liability corporation with no business dealings

with the Debtor. (See SSOF #5, 11)  On the other side of the equation, Parmar as an officer of

the Debtor is without question an insider of the Debtor.  11 U.S.C. §101 §31(B)(ii).  The

Objection to Motion for Entry of Default filed by Defendant left no doubt when it stated that

Parmar controls Defendant. (See SSOF#10)   See *Machado v A. Canterpass*, LLC, 115 A.D.3d

652, 654, 981 N.Y.S 2d 758 (2014) (clear evidence of fraud where the principals of the transferor

are also principals of the transferees, such that "the same individuals had ownership and control

over the conveyed properties, before and after the conveyances".)  This factor is satisfied and

weighs heavily in favor a fraudulent conveyance.

(iii)    <u>The retention of possession, benefit or use of the property in question</u>

59.    Parmar and his girlfriend, their parents, and their cousins occupied the

Condominium Unit. (See SSOF #9). The Condominium Unit, purchased with the Debtor's funds,

was Parmar's trinket to use as he pleased.  There is no reasonable basis to dispute this factor

which weighs in favor of finding a fraudulent conveyance.

(iv)    <u>The financial condition of the party sought to be charged both before and after the transaction in question;</u>

60.    In 2008 and 2009, Parmar had taken out numerous personal loans in the sum of

not less than $1,600,000. (See SSOF ##21, 24). As of 2015, Parmar was in default on at least two

loans.  Parmar was diverting monies of the Debtor to cover his personal obligations despite the

fact the Debtor could not make payroll.  (See SSOF #22).  Parmar, along with his girlfriend,

were actively diverting millions of dollars to shell companies with no business activities.  (See

Affidavit of J. Nolan, ¶17).  (See Request for Judicial Notice, Exhibit 4, State Court Complaint;

Parmar pleads as fact that he and Sartison were moving large amounts of monies to real estate

ventures in 2016 & 2017)  Parmar's actions were extreme and unconventional.  Further, as set

forth below, the Debtors' financial condition depleted as it was losing money year after year.

(See SSOF ##30-34)

> (v).  <u>The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) The general chronology of the events and transactions under inquiry</u>.

61.    The transaction in question is suspect on its face; the concealment of Parmar's

identity in a transaction he orchestrated for his benefit, looting 5.6 MM from the Debtor's M&T

bank account, the false identity of "Salil and Kiran Sharma" as occupants of the property, the

creation of an LLC presumably to hide Parmar's identity, use of the Debtor's funds for a non-

business related transaction, the misuse of Debtor's credit cards to pay expenses associated with

the Condominium Unit, and Parmar's pattern of diverting funds from the Debtor to pay his

expenses. (See SSOF ##21-25).   Parmar borrowed monies in 2010 from individuals, Feuer and

Schoor, for personal loans.  (See SSOF ##21, 24)  With the assistance of his CFO, the records of

the Debtor in 2017 were altered to create a fake vendor agreement to make it appear that the use

of the Debtor's funds to pay Parmar's personal loans were business related.  (See SSOF #23).

The incident evidences Parmar's complete control of the Debtor, disregard of corporate

formalities and lack of good faith both with respect to the Transfer and in dealing with the

Debtors' creditors.  Where the plaintiff alleges badges of fraud, upon "defendants' failure to

proffer any legitimate explanation for the conveyances, the defendants' actual fraudulent intent is readily inferable on these facts, and the plaintiff is entitled to a judgment setting those conveyances aside under DCL § 276." *Machado v A. Canterpass*, LLC, 115 AD3d 652, 654, 981 N.Y.S.2d 758 (2d Dept 2014). Plaintiff has satisfied his prima facie case in establishing the badges of fraud and a finding of actual intent to hinder or delay creditors.

C. **Transfer Of Title To The Defendant Was A Constructively Fraudulent Transfer As The Transfer Was Not Made In Good Faith Or For Fair Consideration.**

62. *NY DCL Sections 273, 274, and 275* set forth three paths to recover a constructively fraudulent transfer. A conveyance is vulnerable to attack by a creditor without regard to the actual intent of the transferor –if the transfer is considered to have been in constructive fraud of the creditor. *Laco X-Ray Sys., Inc. v. Fingerhut*, 88 A.D.2d 425, 432; 453 NYS2d 757 (2d Dept. 1982).

(i) The Transfer Was Not Made In Good Faith and For Fair Consideration

63. As the Second Circuit has noted:

> [A] conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and . . . one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275. *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005).

64. The element of fair consideration exists when, in exchange for property or an obligation, "as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" (Debtor and Creditor Law § 272 [a]). "[A] conveyance that renders the

conveyor insolvent is fraudulent as to creditors without regard to actual intent, if the conveyance was made without fair consideration." *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805, \*11 (Supt Ct, 2016) citing *to CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. P 'ship*, 25 A.D.3d 301, 302, 808 N.Y.S.2d 187 (1st Dept 2006) (emphasis added).  Moreover, even if there is fair consideration, a transfer is still constructively fraudulent in the absence of good faith on the part "of both the transferor and the transferee." at 303 (emphasis added), quoting *Berner Trucking, Inc. v Brown*, 281 AD3d 924, 925, 722 N.Y.S.2d 656 (1st Dept 2001); see *Sardis v Frankel*, 113 AD3d 135, 142, 978 N.Y.S.2d 135 (1st Dept 2014) ("Fair consideration' ... is not only a matter of whether the amount  given for the transferred property was a 'fair equivalent' or 'not disproportionately small,' but whether the transaction is made 'in good faith,' an obligation that is imposed on both the transferor and the transferee."). Importantly, as pertinent here, "[a]n insider payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." *Am. Media, Inc. v Bainbridge & Knight Labs., LLC*, 135 AD3d 477, 478, 22 N.Y.S.3d 437 (1st Dept 2016), citing *EAC of N.Y, Inc. v Capri 400, Inc.*, 49 AD3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept 2008)  ("The requirement of good faith is not fulfilled through preferential transfers of corporate funds to directors, officers or shareholders of a corporation that is, or later becomes, insolvent, in derogation of the rights of general creditors."); *Am. Panel Tec v Hyrise, Inc.*, 31 AD3d 586, 587, 819 N.Y.S.2d 768 (2d Dept 2006) ; *P.A. Bldg. Co. v Silverman*, 298 AD2d 327, 328, 750 N.Y.S.2d 13 (1st Dept 2002)  The diversion of corporate funds by the Debtor's CEO for a non-business related transaction designed to enrich the CEO  means the Transfer fails as a matter of

law as it could not be made in "good faith" under New York law. The explanation proffered in the *Objection to Motion for Default Judgment*; that Parmar was owed monies and the Transfer was consideration of a debt personally owed to him as the CEO or majority owner, simply fails as it lacks good faith.

65.     The Transfer also fails as it is undisputed the Transfer was to a Defendant, third party corporation.  The Third party was owed no antecedent debt and did no business with the Debtor. (See SSOF ##11, 13)  In fact, the Debtor improperly paid for the debts of the Defendant after the Transfer of title to the Condominium Unit. (See SSOF ##15-17) Courts have long recognized that "transfers made to benefit third parties are clearly not made for a 'fair' consideration," and, similarly, that "a conveyance by a corporation for the benefit of an affiliate [should not] be regarded as given for fair consideration as to the creditors of the conveying corporations." 4 Collier on Bankruptcy P 67.33, at 514.1-14.2 (14th ed. 1978); See also *In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 337 (9th Cir. 1978); *Bennett v. Rodman & English, Inc.*, 2 F. Supp. 355 (E.D.N.Y.), aff'd per curiam, 62 F.2d 1064 (2d Cir. 1932).  Simply stated, the Transfer fails as a constructive fraudulent transfer as Parmar gave title away to a third-party corporation for no value.

D.     **The Debtor Was Insolvent In December 2015 And February 2016, Or Engaged In Or Was About To Engage In A Business Transaction For Which Its Remaining Property Constitutes Unreasonably Small Capital.**

66.     At the time of the Transfer, the debtor was insolvent or was about to engage in a business transaction for which its remaining property constituted unreasonably small capital.  As of December 31, 2015, the Debtor operated at a net loss and did so every year from 2015 to the

filing of the Petition. The diversion of 5.6MM out of the Debtor's bank account in February 19, 2016 noticeably magnified the Debtors' losses for 2016.

67.    "The Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency." *Lawson v. Ford Motor Co. (In re Roblin Indus.),* 78 F.3d 30, 35 (2nd Cir. 1996) (citations omitted).  Both the New York DCL and the Bankruptcy Code define insolvency. For purposes of NY DCL § 273, "insolvency" is defined as "when the present fair salable value of [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NY DCL § 271(1) (McKinney 2014). As noted above, insolvency may also be established by presumption. New York law provides that there is a presumption of insolvency where a debtor makes a transfer without fair consideration.  Under N.Y. Debt. & Cred. Law § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan),* 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.),* 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000); *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016) (trustee has met his burden on summary judgment and there is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for intra-family transfer).  Even putting aside the presumption of insolvency, the Debtor's financial condition in February 2015, 2016, and 2017 was negative, with cumulative losses in the tens of millions of dollars.

68.     The Debtor's financial records indicate a consistent operating loss evidencing the Debtor was not viable. The Debtor operated at a loss before the Transfer and for every year until its demise on March 16, 2018.  As of December 31, 2017, The Debtor had accumulated a staggering cumulative loss of -$133,398,156, evidencing it carried negative earnings year after year since 2015 (See SSOF #34).

| Year | Net Income (Loss) | Retained Earnings |
|------|-------------------|-------------------|
| 2015 | -12,091,720 | -94,135,177 |
| 2016 | -39,007,282 | -112,905,441 |
| 2017 | -20,492,714 | -133,398,156 |

(See SSOF ##30, 31 34):

69.     The Debtor had negative net income for each of the above referenced years which notably spiked to negative -39 MM in 2016, the time frame in which 5.6MM was diverted out of the Debtors' bank account to purchase the Condominium Unit.   Cumulative negative retained earnings indicates the company was consistently piling up losses year after year which it could not cover.  See *Lanik v. Smith (In re Cox Motor Express of Greensboro, Inc.)*, 2017 Bankr. LEXIS 233, 26 (Bkrtcy, MD NC, 2017) (The balance sheet also evidences negative retained earnings and the debtor had a total loss in the amount of $945,939.  These facts tend to show that Debtor was in serious financial difficulty and insolvent on the date of the first transfer); *In re F.H.L., Inc.*, 91 B.R. 288, 297(Bkrtcy NJ, 1988) (income tax returns and financial statements indicating a negative net operating loss are evidence of insolvency).

70.    New York DCL § 274 permits a trustee to avoid a transfer where, among other things, the movant shows that the transfer left the transferor in "a financial condition short of equitable insolvency."  *Manshul*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *54 (citing *Moody*, 971 F.2d 1056, 1070 (3rd Cir. 1992).  The test is aimed at transfers that leave the transferor, such as a corporate or other entity, technically solvent but doomed to fail.  See *Moody*, 971 F.2d at 1070, n.22.    5.6 MM was removed directly from the Debtor's bank account in December and February 2016 which magnified the Debtors' loss. Negative income for 2016 tripled from -12MM in 2015 to -39 MM.  (See SSOF ##30, 31).  The Debtor was doomed to fail with monies being siphoned out of its checking account and purchases of asset-less companies.

E.    **The Court Should Declare the Condominium Unit as Property of the Liquidating Trust and Order Turnover of Title and the Property to the Plaintiff**

71.    In its Fifth, Sixth and Seventh Claim for Relief as filed in its Complaint, the Plaintiff seeks (a) a declaration that by reason of the fact the Condominium Unit transfer was an intentionally and /or constructively fraudulent transfer, the transfer should be avoided, declared "property of the estate", recovered for the benefit of the estate, and immediately returned to the Plaintiff.  (See Affidavit of J. Nolan, see Exhibit A,Complaint ¶43, 49-51). Pursuant to 11 U.S.C. § 542, the Condominium Unit should be ordered returned to the Plaintiff and title cleared in the name of the Liquidating Trustee.

72.    The purpose of section 542 of the Bankruptcy Code is "to expand the trustee's power to 'bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced,' ensuring that a broad range of property is included in the estate. *In re Ir. Bank Resolution Corp.,* 559 B.R. 627, 643 (Bankr. DE, 2016)  A

turnover action "invokes the court's most basic equitable powers to gather and manage property of the estate including authority to compel an entity to turn over property and to seek injunctive relief to protect the asset sought. *Id.* Pursuant to 11 U.S.C §541, in determining what is property of the estate, the issue is not who has title or possession. See *In re Community Hospital of Rockland County*, 5 B.R. 7, 10 (Bankr. S.D.N.Y. 1979). Section 541(a)(1) provides the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Property of the estate is broadly defined. See *In re Langley*, 20 B.R. 595, 599-600 (Bankr. N.D. Ind. 1983). See *First Cmty. Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.)* 2009 Bankr. LEXIS 2325, * 16 (BNKR. E.D.V.A, 2009) (avoided interest is preserved for the benefit of the bankruptcy estate under § 550 becomes property of the estate under § 541(a)(3) of the Bankruptcy Code and the Trustee, as owner of the equitable estate in the real property, was entitled to compel turnover of legal title under § 542(a) from the partnership which held bare legal title to the Real Property).

73.     To support a cause of action for turnover, the trustee has the burden of proof, by a preponderance of the evidence, to establish that, (1) the property constitutes property of the estate in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is a type the trustee could use or sell or lease pursuant to 363, and (4) the property is not of an inconsequential value or benefit to the estate. *Collier on Bankruptcy*, §542.03[1] (Richard Levin & Henry J. Sommer eds., 16 ed.); *Newman v. Tyberg (In re Steel Wheels Transp., LLC)*, 2011 Bankr. LEXIS 4582, 14 (Bankr. D. N.J. 2011). The fact that monies of the Debtor were removed from its bank account and the asset converted

into real property does not change the fact the Condominium Unit is "estate property" pursuant

to 11 U.S.C. §541, and subject to turnover. *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311,

326 (Bankr. EDNY, 2018) ( the change in an asset's form from one type, such as real estate or

shares of a corporation, to another, such as cash, should not lead to a change in whether it is a

part of a debtor's bankruptcy estate).  As set forth above, monies from the Debtor's bank account

were liquidated and utilized to purchase the Condominium Unit with no benefit to the estate.

Defendant, third party, holds bare title to the Condominium Unit.  Lastly, the recovery sought

will satisfy any extant claims against the Debtors' estates and therefore, the property has value of

consequence to the estate.  The cause of action for turnover is satisfied and Plaintiff within his

right to seek an order  turning over legal title to the Condominium Unit as well as all keys, entry

cards, and forms of possession.

F.    **Plaintiff Is Entitled to a Monetary Award to Satisfy the Encumbrance against the Condominium Unit, Charges the Debtor Paid While the Unit Was Misappropriated As well As an Award of Its Attorney's Fees.**

74.    Plaintiffs also seeks a money judgment against Defendant to satisfy the

encumbrance/lien placed against the Condominium Unit  based on Defendant/Parmar's failure to

pay the common charges associated with its maintenance as well as attorney's fees incurred by

the RBM.

1.    Defendant Is Liable For the Amount of the Encumbrance Against the Condominium Unit

74.    While a defrauded creditor is not entitled to an enhancement of position beyond

what it was before the fraud, the statute provides for a money judgment in instances where the

asset has depreciated or been encumbered .  *Cadle Co., supra*, at 73, citing to *Mfrs. & Traders*

*Trust Co. v. Lauer's Furniture Acquisition, Inc*., 226 A.D.2d 1056, 641 N.Y.S.2d 947, 948 (N.Y. App. Div. 1996) ("As a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance."; *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17, 24 (N.Y. App. Div. 1986).  Money judgments are available where assets have been sold and commingled with a transferee's assets or when the grantee has disposed of the wrongfully conveyed property or depreciated it." *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, No. 11 Civ. 3489 (JMF), 2014 U.S. Dist. LEXIS 16755, 2014 WL 516695, at *2 (S.D.N.Y. Feb. 10, 2014).  To that end, courts may impose money judgments against transferees in the amount of the depreciated or encumbered property. See *United States v. Bushlow*, 832 F. Supp. 574, 582-83 (E.D.N.Y. 1993) (holding transferee son liable for mortgage taken out on conveyed house).  In the present case, following the fraudulent transfer and due to the Defendant's conduct, the Condominium Unit has been encumbered by a judgment lien of not less than $369,469.96 (See SSOF #20).  The Debtors' credit card has also been misused in the amount of $68,247.19, for common charges of the Condominium Unit which the Defendant neglected to pay. (See SSOF #16).

75.    Alternatively, under New York law, a creditor may also recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003); see also *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) ("The New York Court of Appeals has made it clear that the pertinent provisions of the New

York Debtor and Creditor Law provide a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance.")  In is not reasonably disputed that Defendant third party is the sole creation of Parmar and received the property for the personal benefit of Parmar. Plaintiff is entitled to a monetary judgment against "parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance".[3]

G.      **The Award of Attorney's Fees In Favor of The Plaintiff Is Warranted In the Present Circumstances.**

76.     Pursuant to § 276-a, attorney's fees are awarded against a defendant who is the grantee of a fraudulent conveyance when the court makes a finding that defendant was aware of and participated in the actual fraud.  See *Carey v. Crescenzi*, 923 F.2d 18, 20 (2d Cir. 1991). [4] Defendant not only participated in-but specifically orchestrated, the transaction in question resulting in the hijacking of 5.6 MM from the Debtor's estate for his personal gain.  Parmar has not cooperated to return the Condominium Unit to the Trustee but rather chosen to delay the present adversary action.  During the interim, Defendant refused to pay for the upkeep of the asset at issue.  Adding insult to injury, the unsecured creditors of the Debtors' estate (a) bear the burden of the legal fees incurred in prosecuting the present adversary, and (b) the legal fees incurred by the RBM (Rosenberg & Pittinsky, LLP) to pursue a delinquent owner.  The legal fees and costs of the RBM now approach or exceed $400,000.  No rational explanation can be

---

[3] The exact amount of the lien by the RBM can be determined by an updated ledger submitted from the RBM as the Condominium Unit continues to languish.
[4] We stated that "at the least, before charging [the transferees] personally with attorneys' fees, there should be a finding of their actual knowledge of the circumstances that render these conveyances fraudulent." Infra, Cadle, at 75.

proffered by Defendant for the aforementioned conduct which has unnecessarily increased the costs to all involved.[5]

## **CONCLUSION**

**WHEREFORE**, the Trustee requests that this Court enter an order substantially in the form as attached to the Affidavit of Jeffrey Nolan, as **Exhibit N**:

(1)      Avoiding the transfer of title of the Condominium Unit to Defendant as a fraudulent transfer,

(2)      Determining the Condominium Unit is an asset of the Debtor's estate and is recoverable pursuant to 11 USC §§544 and 550 & NY Debt & Cred L §§ 273-276, *et seq*.

(3)      Issue a Declaration:  (a)  that the Condominium Unit, in the possession, custody or control of 2 River Terrace, Apartment 12J, LLC., and any associated deposit in its name, was purchased with the Debtor's funds and  is property of the Debtors' estate, (b) declaring the bargain and sale grant deed with covenants conveyed to Defendant is avoided, (c)  declaring Defendant has no ownership interest in the Condominium Unit, and  (d) all equitable and legal ownership of the Condominium Unit, including all authority to perform all acts as the property owner, or record any real property transfer forms memorializing the transfer of legal title of the Condominium Unit, resides with the Liquidating Trustee, as the duly authorized representative of the Debtors' estate,

(4)      Order turnover of the physical Condominium Unit, including all associated keys, and entrance cards,

---

[5] A ruling awarding Plaintiff reasonable attorney's fees is proper and can be subject to proof by separate motion.

(5)    Awarding a monetary judgment for the amount of the judgment lien against the

Condominium Unit, and

(6)    Awarding attorney's fees to Plaintiff pursuant to NY Debt & Cred L § 273,

according to proof.

Dated:  December 1, 2020                    Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

Counsel For Plaintiff, the Liquidating Trustee