UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: : | |
| : | Chapter 11 |
| ORION HEALTHCORP, INC. et al., : | |
| : | Case No. 18-71748 (AST) |
| Debtors. : | |
| _____ : | (Jointly Administered) |
| : | |
| HOWARD M. EHRENBERG IN HIS : | |
| CAPACITY AS LIQUIDATING TRUSTEE : | |
| OF ORION HEALTHCORP, INC., et al., : | Adv. Pro. No. 20-08051 (AST) |
| HEALTHCORP, INC., ET AL., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| ELENA SARTISON; 2 RIVER TERRACE : | |
| APARTMENT 12J, LLC; CLODAGH : | |
| BOWYER GREENE A/K/A CLODAGH : | |
| BOWYER; ELLIOTT GREENE, : | : |
| : | |
| Defendants. : | |

---

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN
SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**

|   | Statement of Fact | Evidentiary Support |
|---|---|---|
| A | Defendant is an active Domestic Limited Liability Company formed under the laws of the State of New York on December 23, 2015. | Division of Corporations certificate, Plaintiff's Exhibit B |
| B | Parmar was owed $650,000 annual salary plus bonuses calculated from EBITDA each year commencing in June 2013 and continuing up to and after the subject purchase in 2016. | First United Health, LLC consulting agreement, attached as Defendant's Exhibit 1 |
| C | EBITDA totaled in the millions in both 2014 and 2015, with annual increases. | Excerpt from CHT Board Meeting Notes, attached as Defendant's Exhibit 2 |
| D | CHT went public on the London AIM in 2014; part of the process included ratification and publication of Parmar's compensation under the consulting agreement. | Admission to the AIM public document, attached as Defendant's Exhibit 3 |
| E | In 2014, Parmar elected to receive his bonus in shares and was not paid in cash; the bonus was not disputed by the board and was ratified. | Consent of the Board; attached as Defendant's Exhibit 4 |
| F | As of June 2015, the bonus due to Parmar under the consulting contract with FUH was in excess of 9 million dollars. | Warrant dilution calculations dated June 26, 2015; attached as Defendant's Exhibit 5 |
| G | The Debtor maintained multiple bank accounts, including a checking account at Manufacturer's Trust Bank, account #-68132. | This fact is acknowledged by Plaintiff's Statement of Facts 3 |

| | | |
|---|---|---|
| H | On December 23, 2015, the Debtor transferred $545,000 from the M&T Bank Account by wire to the account of Lustrin Tetelman, LLP, attorneys for the Sellers of Apartment 12J. The transfer was made on Parmar's behalf as part of the funds owed him under the FUH contract. | The fact of this transfer is acknowledged in Plaintiff's Statement of Facts 4 |
| I | At the time of the purchase of Apartment 12J, the law firm of Robinson Brog represented the Debtor and maintained an escrow account already holding funds on the Debtor's behalf. Robinson Brog also represented FUH and Parmar, and prepared the LLC paperwork forming Defendant 2 River. | See Plaintiff's Statement of Facts 8, Exhibit D to the Nolan Affidavit, and Plaintiff's Exhibit B |
| J | On February 19, 2016, the Debtor transferred $5,058,408.81 from the M&T Bank Account to the IOLA account maintained by Robinson Brog. This sum constituted the closing costs required for the purchase of Apartment 12J as well as a majority of the bonus owed to FUH for Parmar's services as CEO of the Debtor. Robinson Brog's IOLA account held other funds on behalf of the various entities it represented. The closing took place on that same date with funds from Robinson Brog's IOLA account. | See Defendant's Exhibit 1, Plaintiff's Statement of Facts 7 and 8. |
| K | Defendant 2 River purchased Apartment 12J from Clodagh Bowyer Greene and Elliott Greene. | See Plaintiff's Statement of Facts 5 |

| | | |
|---|---|---|
| **L** | Throughout the year 2016 and for a substantial portion of 2017, Parmar continued in his role as CEO of Constellation.  As part of this role, Parmar carried a corporate credit card issued in his name. | Plaintiff's Exhibit 3, payment history for American Express Corporate Card issued in Parmar's name; Defendant's Exhibits 1 and 9 |
| **M** | Throughout the year 2016, the Debtor engaged in negotiations with Chinh Chu and CC Capital leading up to a transaction that took the Debtor off the London AIM in January of 2017. The Go Private process required a significant financial outlay by the Debtor of both cash and personnel resources. | Defendant's Exhibit 10, excerpt from funds flow document from closing of the Go Private |
| **N** | In 2016, the Debtor acquired Allegiance Consulting Associates, LLC and Allegiance Billing & Consulting, LLC for a combined purchase price of $4,776,000. | Defendant's Exhibit 6, Closing statement for ABC/ACA acquisition |
| **O** | In June of 2016, the Debtor paid in excess of $18 million to pay off principal debt, pay pre-payment fees, and buy back outstanding options. | Defendant's Exhibit 7, Loan Warrant Settlement |
| **P** | Throughout the months immediately following the purchase of Apartment 12J, the Debtor maintained a healthy cash flow through its primary operating account at JP Morgan Chase. | Defendant's Exhibit 8, redacted full statement for March 2016 and redacted summary pages through June 2016 |
| **Q** | As part of the Go Private transaction, a new consulting agreement was prepared maintaining Parmar as the CEO. | Defendant's Exhibit 9, Consulting agreement between CHT Holdco and Parmar |

| | | |
|---|---|---|
| **R** | At the closing of the Go Private transaction, the Debtor contributed $5 million in cash from available reserves. | Defendant's Exhibit 10, redacted excerpt from funds flow at closing |