Hearing Date: January 21, 2021<br>
Objection Deadline: January 6, 2021

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| ORION HEALTHCORP, INC.,[1] | : Case No. 18-71748 (AST) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| HOWARD M. EHRENBERG IN HIS CAPACITY | : |
| AS LIQUIDATING TRUSTEE OF ORION | : Adv. Pro. No. 20-08051 (AST) |
| HEALTHCORP, INC., ET AL., | : |
| | : [See Joint Statement of Plaintiff and |
| Plaintiff, | : Defendant of Uncontroverted Facts; |
| | : Affidavits of Jeffrey P. Nolan and |
| v. | : Dan Jones; and Motion To Strike |
| | : Filed Concurrently Herewith] |
| ELENA SARTISON; 2 RIVER TERRACE | : |
| APARTMENT 12J, LLC; CLODAGH BOWYER | : |
| GREENE A/K/A CLODAGH BOWYER; ELLIOTT | : |
| GREENE, | : |
| | : |
| Defendants. | : |

---------------------------------------

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST DEFENDANT 2 RIVER TERRACE APARTMENT 12J, LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ON REPLY ..................................................................................2

STANDING ..............................................................................................................................3

PROCEDURAL STATEMENT ...............................................................................................3

STATEMENT OF FACTS .......................................................................................................4

LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION ...........................10

ARGUMENT ..........................................................................................................................11

    A.    The Motion Presented A Prima Facie Case Of Intentional Fraud Pursuant To NY DCL §276,  As 5.6 Million Was Taken Directly Out Of The Debtor's Bank Account To Purchase A Residential Condominium Transferred To A Corporation With No Prior Business Dealings Owed  No Antecedent Debt ............................11

    B.    Defendant's Alternative Explanation That Parmar Was Entitled To Collect 9 Million In Wages And Bonus On Behalf Of FUH, Is Contradicted By The Documents ......................................................................................................13

    C.    The Argument To Set-Off the Debts Of Four Corporations To Support a Claim Of "Fair Consideration" Is An Invitation the Court Should Decline .........................17

    D.    With respect to Constructive Fraud Cause of Action, Pursuant To NY DCL §273-a, Defendant's Argument That The Application Of Section §273-a Can Only Be Asserted By The Plaintiff Who Docketed The Judgment Against the Debtor Is Simply Wrong .....................................................................................................19

    E.    The Opposition Does Not Dispute Legal Authorities In The Motion That A Transfer Between Self-Interested Parties, Without Regard To Actual Intent Of The Transferor, Is Made Without Good Faith And Constructively Fraudulent. ...21

    F.    Repayment Of An Antecedent Debt Constitutes Fair Consideration under § 273-a, Unless The Transferee Is An Officer, Director Or Majority Shareholder Of The Transferor .............................................................................................................23

    G.    With Respect To Constructive Fraud Cause Of Action Pursuant To NY DCL §273, 274 And 275, Defendant Offers No Admissible Evidence To Rebut The Presumption Of Insolvency Or The Evidence Presented In The Motion of Massive Losses .................................................................................................................24

    H.    Plaintiff Is Entitled to a Monetary Award to Satisfy the Encumbrance against the Condominium Unit, Charges the Debtor Paid While the Unit Was Misappropriated As well As an Award of Attorney's Fees. ..................................25

CONCLUSION .......................................................................................................................28

i

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Ventimiglia (In re Ventimiglia)*,
    362 B.R. 71 (E.D.N.Y. 2007) ............................................................. 21

*Am. Panel Tec v Hyrise, Inc.*,
    31 AD3d 586, 819 N.Y.S.2d 768 (2d Dept 2006) .................................... 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................... 11

*Atlanta Shipping Corporation, Inc. v. Chemical Bank*,
    818 F.2d 240 (2d Cir. 1987) ............................................................. 24

*Banner v. Lindsay (In re Lindsay)*,
    2010 Bankr. LEXIS 1554, 27-28 (Bankr. S.D.N.Y. 2010) ...................... 21

*Barlow v. Connecticut*,
    2004 U.S. Dist. LEXIS 9237, *13 (D. Conn. 2004) ............................... 13

*Berlenbach v. Bischoff*,
    137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930) ..................... 14

*Berner Trucking, Inc. v Brown*,
    281 AD2d 924, 722 N.Y.S.2d 656 (1st Dept 2001) ................................ 22

*Cadle Co. v. Newhouse*,
    No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716,
    at *5-6 (S.D.N.Y. Aug. 16, 2002) .......................................... 20, 26, 27

*Carey v. Crescenzi*,
    923 F.2d 18 (2d Cir. 1991) ............................................................. 27

*Community of Roquefort v. William Faehndrich, Inc.*,
    303 F.2d 494 (2d Cir. 1962) ............................................................ 12

*Dixie Yarns v. Forman*,
    906 F. Supp. 929 (S.D.N.Y. 1995) ....................................... 21, 23, 24, 27

*Dressler v. MV Sandpiper*,
    331 F.2d 130 (2d Cir. 1964) ............................................................ 12

*Federal Republic of Germany v. Elicofon*,
    536 F. Supp. 813 (E.D.N.Y 1978) ..................................................... 11

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
    2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866 (S.D.N.Y. Aug. 20, 2000) .................... 25

*HBE Leasing Corp. v. Frank*,
    837 F. Supp. 57 (S.D.N.Y. 1993) ...................................................... 24

*In re Archway Cookies*,
    435 B.R. 234 (Bankr.D.Del., 2010) .................................................... 11

*In re Bennett Funding Group, Inc.*,

146 F.3d 136 (2d Cir. 1998) ................................................................................................ 18

*In re Checkmate Stereo and Electronics, Ltd.*,
9 Bankr. 585 (Bankr. E.D.N.Y. 1981), aff'd, 21 Bankr. 402 (E.D.N.Y. 1982) ....................... 24

*In re F.H.L., Inc.*,
91 B.R. 288 (Bkrtcy NJ, 1988) ............................................................................................. 25

*In re Fair*,
142 Bankr. 628 (Bankr. E.D.N.Y. 1992) .............................................................................. 21

*In re Lehman Brothers Holdings, Inc.*,
433 B.R. 101 (Bankr. S.D.N.Y., 2010) ............................................................................ 18, 19

*In re SemCrude*,
399 B.R. 388 (Bankr. D. Del. 2009) ..................................................................................... 19

*Kramer v. Mahia (In re Khan)*,
2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016) ........................................................ 25

*Lanik v. Smith (In re Cox Motor Express of Greensboro, Inc.)*,
2017 Bankr. LEXIS 233, 26 (Bkrtcy, MD NC, 2017) .......................................................... 25

*Machado v A. Canterpass, LLC*,
115 A.D.3d 652, 981 N.Y.S 2d 758 (2014) .......................................................................... 16

*Marine Midland Bank v. Murkoff*,
120 A.D.2d 122, 508 N.Y.S.2d 17, 24 (N.Y. App. Div. 1986) ............................................. 26

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348 L. Ed. 2d 538 (1986) ........................................................... 10

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
394 B.R. 646 (E.D.N.Y. 2008) ............................................................................................ 22

*Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.*,
226 A.D.2d 1056, 641 N.Y.S.2d 947 (N.Y. App. Div. 1996) ............................................... 26

*Moody v. Sec. Pacific Business Credit, Inc.*,
971 F.2d 1056 (3rd Cir. 1992) ............................................................................................ 25

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2nd Cir. 1993) ................................................................................................ 20

*P.A. Bldg. Co. v Silverman*,
298 AD2d 327, 750 N.Y.S.2d 13 (1st Dept 2002) ............................................................... 23

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*,
No. 11 Civ. 3489 (JMF), 2014 U.S. Dist. LEXIS 16755, 2014 WL 516695
(S.D.N.Y. Feb. 10, 2014) ..................................................................................................... 26

*Patterson v. County of Oneida, N.Y*,
375 F.3d 206 (2d Cir. 2004) ................................................................................................ 12

*Raskin v. Wyatt Company*,
125 F.3d 55 (2d Cir. 1997) .................................................................................................. 12

*Republic Insurance Co. v. Levy*,
329 N.Y.S.2d 918 (Sup. Ct. Rockland 1972)............................................................................ 21

*Sardis v Frankel*,
113 AD3d 135, 978 N.Y.S.2d 135 (1st Dept 2014)................................................................. 22

*Schoenberg v. Schoenberg*,
113 Misc. 2d 356, 449 N.Y.S.2d 137, mod. on other grounds,
456 N.Y.S.2d 14 (Sup. Ct. Nassau 1982) .............................................................................. 21

*Southern Industries, Inc. v. Jeremias*,
66 A.D.2d 178,  [**19]  411 N.Y.S.2d 945 (2d Dept. 1978)................................................. 24

*State Farm Mut. Auto Ins. Co. v. Grafman*,
No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122
(E.D. N.Y. Sept. 221, 2017)..................................................................................................... 15

*Stochastic Decisions, Inc. v. DiDomenico*,
995 F.2d 1158 (2d Cir. 1993).................................................................................................. 27

*United States v. Alfano*,
34 F. Supp. 2d 827 (E.D.N.Y. 1999) ...................................................................................... 22

*United States v. Bushlow*,
832 F. Supp. 574 (E.D.N.Y. 1993) ......................................................................................... 27

*United States v. Mazzeo*,
306 F. Supp. 2d 294 (E.D.N.Y. 2004) .................................................................................... 22

*Vigilant Ins. Co. v. M/T Clipper Legacy*,
656 F. Supp. 2d 352 (S.D.N.Y. 2009)..................................................................................... 12

## Rules

Federal Rule of Civil Procedure 56(e) ................................................................................ 11, 12

## Other Authorities

13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§ 85-29 & 85-30
(2002)......................................................................................................................................... 14

COLLIER OF BANKRUPTCY §544.06[1] (Richard Levin & Henry J. Sommer eds., 16th ed). 21

N.Y. Debt & Cred. Law § 270 ..................................................................................................... 4

N.Y. Debt. & Cred. Law § 273 ............................................................................................. 20, 24

N.Y. Debt & Cred. Law 273-a .......................................................................................... passim

N.Y. Debt & Cred. Law §273-1................................................................................................. 22

N.Y. Debt & Cred. Law §276-a ................................................................................................. 27

## SUMMARY OF ARGUMENT ON REPLY

1.      The Trustee seeks to avoid and turnover the fraudulent transfer of legal title to the real property located at 2 River Terrace, Apartment 12J, located in, New York, NY (the "Condominium Unit")(the "Transfer").  Not only do the undisputed facts evidence the residential Condominium Unit was acquired with the Debtor's funds, but until July 2017, its maintenance and upkeep was paid for by the Debtor.

2.      The Opposition does not dispute that 5.6 million dollars from the Debtor's bank account was diverted from the Debtor ("Transferor") by its majority shareholder and Chief Executive Officer ("CEO"), Paul Parmar ("Parmar"), to the Sellers, Clodagh and Elliott Greene, and legal title to the property transferred to Defendant, 2 River Terrace, Apt. 12J LLC ("Defendant") (the "Transferee"), an entity Parmar owned and managed.  The Opposition asserts that the Debtor received "fair consideration" in satisfaction of a debt owed to Parmar for salary and bonuses.  The explanation, even if properly supported by admissible evidence, indicates a *self-interested transaction* which, as a matter of law, violates NY DCL.  However, the argument is doomed as the exhibits attached to the Opposition do not support any amount being owed to First United Health, LLC ("FUH"), let alone to Parmar.  To entertain any argument the Defendant provided "*fair consideration*" would force the Court to perform an improper triangular set-off prohibited under the bankruptcy code.  The Transfer is simply dishonest as is the notion that Parmar could use the Debtor's credit cards to pay for the upkeep of the property.  Clear evidence of fraud exists not only based on the admitted facts of how Parmar set up the Transfer, but based on the lack of credible evidence provided.

3.      As compelling, even without regard to the actual intent of the Transferor, the Transfer fails as a constructively fraudulent transfer.  N.Y. DCL 273-a, expressly prohibits

*self-interested* transactions, i.e. where an executive, owner or controlling shareholder sits on both sides of the transfer, as it per se lacks "good faith".  The argument in the Opposition that the Transfer satisfied an "antecedent debt" owed to FUH is not "fair consideration" where the transferee is also an officer, director or majority shareholder of the transferor.  As a matter of law, summary judgment is proper based on both grounds; lack of "good faith" and "fair consideration".  Lastly, New York law provides that there is a presumption of insolvency where a debtor makes a transfer without "fair consideration" as done in the present circumstances. The Opposition submits no admissible evidence to refute the Motion demonstrating that as of December 31, 2014, the Debtor operated at a net loss and did so every year from 2014 to filing bankruptcy in 2018, whereupon it graduated with a cumulative net loss of -$133,398,156.

4.     The Condominium Unit is under current threat of Sheriff's Sale scheduled for January 29, 2021.  The Condominium Unit represents one of the few remaining assets the Trustee has been able to trace and make available to unsecured creditors.  The Condominium Unit has languished over the past two years incurring in excess of $455,000 in debt. The legal issue is properly before the Court and ripe for decision.

## STANDING

5.     The Opposition does not dispute the standing of the Liquidating Trustee or that a predicate creditor(s) existed as of the Petition Date.

## PROCEDURAL STATEMENT

6.     Plaintiff filed the complaint (the "Complaint") in this action on March 14, 2020 [Docket No. 1].  The Complaint sought to recover alleged fraudulent transfers under applicable provisions of the Bankruptcy Code and DCL and turnover of title to the Condominium Unit.

3

7.    On November 10, 2020, the Court conducted a hearing on Plaintiff's Motion for Default Judgment against Defendant.  The Motion for Default Judgment was denied as the issues presented were better addressed by the Court on summary judgment.  Defendant was ordered to file an Answer on or before November 24, 2020.

8.    On November 16, 2020, the Court issued its Amended Scheduling Order and Order Concerning Summary Judgment ("Amended Scheduling Order").  [Dkt No. 38]

9.    Pursuant to the Amended Scheduling Order, the Court set a briefing schedule and set the matter for oral hearing, if any, on January 21, 2021 at 10:00 am.  [Dkt. No. 38]  Defendant requested a 2 day extension to file their Opposition to December 30, 2020, due to the intervention of the holidays and Plaintiff's Reply date was graciously extended a similar two day period to January 6, 2021.  The Parties submitted separate statements of fact in support of the Motion [Dkt no. 43], Opposition [Dkt no. 51], and thereafter joined in filing a single Joint Statement of Plaintiff and Defendant's Uncontroverted Facts, filed concurrently herewith.

## STATEMENT OF FACTS

10.    Based upon the Affidavits attached to the Motion, the documents submitted herewith, the Request for Judicial Notice and the pleadings in this case, there is no genuine issue concerning the following material facts:

A.    Purchase of the Condominium Unit

11.    The Debtors were a consolidated enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices.  (See Separate Statement of Fact ("SSOF") #1.)  Defendant is an active Domestic Limited Liability Company formed under the laws of the State of New York on December 23, 2015.  (See SSOF #2.)

12.    The Debtor's Constellation Healthcare Technologies maintained a checking account at Manufacturer's Trust Bank, account #-68132 ("M&T Bank Account"). (See SSOF #3)  On December 23, 2015, Parmar, the CEO of the Debtor CHT, instructed Sam Zaharis, the chief financial officer ("CFO") of Debtor, to transfer $545,000 by wire from the Debtor's M&T Bank account, to the account of Lustrin Tetelman, LLP., attorneys for Clodagh Bowyer Greene and Elliott Greene (the "Sellers").  (See SSOF #4).  Close of escrow was scheduled for February 19, 2016.  On December 29, 2015, Parmar instructed that "Salil and Kiran Sharma", his brother-in-law, be reflected as the purchasers of the Condominium Unit (See email exchange dated December 29, 2015, between Parmar, Adam Greene, and Zaharis).  (See SSOF #6)   On February 16, 2016, Robinson Brog forwarded the closing statement for the "Parmar Condo Purchase" indicating the closing funds needed to be in the Robinson Brog account before Friday, February 19, 2016.  (See SSOF #7)  On February 19, 2016, Parmar, instructed Zaharis to transfer $5,058,408.81 of the Debtor's monies out of the M&T bank Account to the Debtor's IOLA account at the firm of Robinson Brog.  (See SSOF ##7, 8)  The $5,058,408 was placed directly into escrow in the form of a cashier's check on the same day. (See SSOF #8)  Upon purchasing the Condominium Unit in 2016, Parmar occupied the unit with his girlfriend, Defendant Elaine Sartison.  (See SSOF #9)

B.    Defendant Conducted No Business with the Debtor, Was Owed No Debt by the Debtor, Yet Received Property of the Debtor Worth $5.6 Million

13.    According to the books and records of the Debtor, Defendant performed no service and had no business dealings with the Debtor. (See SSOF #11)  Parmar, as CEO of the Debtor, transferred property to Defendant, a corporation he solely manages. (See SSOF ##10, 12)  The Debtor's books and records evidence no preexisting debt owed to the Defendant.

5

(See SSOF #13)  The Debtor's records evidence no antecedent debt satisfied as a result of the

diversion of $5,603,408.81 in funds from the Debtor's M&T Bank Account. (See SSOF #14)

C.    It is an Undisputed Fact, the Debtor Was Utilized to Pay For The Upkeep of The Condominium Unit For Approximately One Year After the Fraudulent Transfer

14.    Defendant is managed solely by Paul Parmar.  (See SSOF #10)  Douglas

Elliman Property Management collected payments for common expenses associated with the

Condominium Unit. (See SSOF #15) Parmar used the Debtor's credit cards to pay not less than

$68,247.19 for upkeep of the Condominium Unit though he claims such amounts were part of

his compensation scheme. (See SSOF #16) Parmar's access to credit cards of the Debtor were

unilaterally terminated. (See SSOF #17)

D.    Defendant Failed To Pay For Ongoing Taxes, Utilities and Common Area Costs Since February 2018 Resulting in a Judgment in Favor of the Residential Board Which Currently is in Excess of $455,593

15.    Defendant was in default under the covenants with the Residential Board

of Managers ("RBM") by not paying for taxes, utilities and common charges from February

2018, forward.  (See SSOF #18) Defendant claims they were wrongfully excluded by the RBM.

On September 20, 2019, the RBM entered judgment in the sum of $200,208.04, as against

Defendant and the real property for failure to pay the associated fees and costs for electricity,

taxes, and assessments incurred by living in the Condominium Unit. (See SSOF #19)

As of October 1, 2020, the RBM is owed not less than $369,469.96, as neither Defendant nor

any other party has paid the associated fees and costs for any month since February 1, 2018.

(See SSOF #20).  The updated statement of account provided by the RBM as of December 1,

2020, places the debt at $457,417.62 (See Ledger, attached as Exhibit Q, to Affidavit of J.

Nolan)

E.      Parmar's Diversion of the Debtor's Funds to Cover His Outstanding Personal Loans:

16.     In July, 2009, Parmar borrowed $600,000 from his neighbor Howard Schoor.  By 2013, Parmar was in default on the loan. (See SSOF #21)  Defendant does not deny the fact and offers no evidence to rebut it.  In January 2017, Parmar directed Zaharis to pay his personal debts to Schoor with monies from the Debtor despite the fact the Debtor had no monies to make payroll. (See SSOF #22).  Defendant does not deny the fact and offers no evidence to rebut it.

17.     On May 20, 2017, Parmar and Zaharis conspired to and did create a fake vendor agreement, invoices and falsified receivables in order to make it appear that Schoor rendered services to the Debtor.  (See SSOF #23)  Defendant disputes the fact.  Plaintiff submits the sworn deposition testimony of Howard Schoor taken on December 17, 2020, wherein Mr. Schoor denies the vendor agreement is real and confirms his signature was falsified. (See Deposition Transcript of H. Schoor, attached as Exhibit O, to Affidavit of J. Nolan)

18.     As of February 2010, Parmar personally borrowed $1,000,000 from Mark Feuer ("Feuer").  Parmar was owed not less than $400,000 as of 2016.  (See SSOF #24)  On February 7, 2017, at Parmar's direction, $900,000 of the Debtor's funds were wired to Feuer from the Debtor's IOLA account at Robinson Brog at least half of which paid back Parmar's personal loan.  (See SSOF #25)

F.      The Debtors Recorded Consecutive Losses Each Year From 2015 to the Petition Date
        and Had Negative Cumulative Earnings of $133,398,156, as of December 31, 2017

19.     FTI Consulting, Inc. ("FTI") was appointed in September 2017 to conduct a forensic examination of the Debtors' business following questions raised as to CHT's financial condition.  (See SSOF # 26)  Timothy J.  Dragelin served as the Debtors' CEO and CRO shortly after the resignation of executives Parmar, and termination of Sam Zaharis and

Ravi Chivukula on September 29, 2017, and through the filing of the Petition, restructuring and sale of the Debtors' assets. (See SSOF #27)

20.     According to the Debtor's records, on September, 16, 2015, the Debtor CHT acquired *Phoenix Health, LLC* for $14.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity.  (See SSOF #28)

21.     According to the Debtors' records, on September, 18, 2015, the Debtor CHT acquired *Northstar Acquisition, LLC* for $18.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity.  (See SSOF #29);

22.     The Debtor filed an Amended US Corporation Income Tax Return for tax year ending 2015, restating revenue to evidence a net operating loss of negative $11,392,467 for the year.  The Debtor's retained cumulative earnings, or Cumulative Income, was negative $94,135,177 as of December 31, 2015, (See SSOF #30)

23.     The Debtor's filed a US Corporation Income Tax Return for tax year ending 2016, evidencing a net operating loss for 2016 of negative $39,007,282.  (See SSOF #31) For 2016, the Debtors' retained cumulative earnings, or cumulative income, was negative $112,905,441, evidencing it again carried negative earnings and went further into debt year after year.  (See SSOF #31).

24.     On February 10, 2016, CHT acquired MDRX Medical Billing, LLC ("MDRX") for $28 million.  (See SSOF #32)  MDRX had no assets, employees, conducted no business and was a sham transaction with fake revenue. (See SSOF #33)

25.     The Debtor filed its US Corporation Income Tax Return for tax year ending 2017, stating a net income (loss) for 2017 of $20,492,714.  (See SSOF #34) The Debtor

8

retained cumulative earnings, or Cumulative Income (loss), was $133,398,156 as of December 31, 2017.

26.    On December 16, 2015, the Southern District Court of Texas issued a Judgment in the amount of $194,185, against the Debtor in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  The filed claim remains unsatisfied.  (See SSOF #35)

G.    <u>The Consulting Agreement Dated June 10, 2013 Between Constellation Health, LLC and FUH</u>

27.    The Opposition asserts a consulting agreement entitled Parmar to $650,000 in annual salary and bonus based off EBITDA commencing in 2013, 2014, and 2015 (SSOF B), EBITDA totaled in the millions in both 2014 and 2015 (SSOF C), CHT went public in 2014 which ratified and published the consulting agreement (SSOF D), Parmar elected to receive his bonus in shares (SSOF E), which bonus was due to Parmar in excess of $9 million (SSOF F), and the subject transfer was made on Parmar's behalf as part of the funds owed him under the FUH consulting agreement. (SSOF H& J)

28.    The reference to Parmar's compensation in the AIM public document (SSOF D) <u>contradicts</u> the consulting agreement Defendant submitted to the Court (SSOF B) and a claim of an entitlement of millions of dollars in bonuses. See Section 10.3 and 6.1(a) of the AIM Prospectus referencing a <u>flat fee</u> annual bonus of "up to $175,000, payable at discretion of the board".  (See SSOF D; Defendant's Exhibit 3, p. 124.)

29.    The calculation of any bonus according to the consulting agreement is from  EBITA (See Defendant's Exhibit 1) , not EBITDA as set forth in the Opposition, less the amount of funding obtained, whether by issuing equity or borrowing funds…"  (See SSOF B, Exhibit 1)

30.     The Debtor's books and records contain no reference of an antecedent debt being satisfied as a result of the diversion of $5,603,408.81 for the acquisition of the Condominium Unit. (Plaintiff's SSOF #14; Affidavit of D. Jones, ¶6).  The 2015 tax returns and the Debtor's Books and Records do not reflect a bonus paid or an obligation accrued as a recorded unpaid "liability" on the Debtor's balance sheet. (See Second Affidavit of D. Jones, ¶¶4, 5)

31.     The Opposition asserts that in 2016, following the months after the purchase of the Condominium Unit, the Debtor maintained a healthy cash flow, (SSOF P), engaged in negotiations with Chin Chu and CC Capital (SSOF M), acquired Allegiance Consulting Associates LLC, (SSOF N), paid off debt and options of 18 million (SSOF O), and the Debtor had cash reserves of $5 million in 2017(SSOF Q, R).  Plaintiff objects to the lack of foundation and admissibility, or, that the evidence is probative of solvency. (See Motion to Strike and Evidentiary Objections to Exhibits Submitted In Support Of Defendant's Opposition To Motion For Summary Judgment, filed concurrently herewith)

## LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION

32.     Under Rule 56, once there is a showing of the absence of an issue of fact, the opposing party must produce specific evidence that raises a genuine issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing substantive law, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is designed "to avoid trial or extensive discovery if

facts are settled and dispute turns on issue of law." *In re Archway Cookies*, 435 B.R. 234, 238

(Bankr.D.Del., 2010)

## **ARGUMENT**

A.    <u>The Motion Presented A Prima Facie Case Of Intentional Fraud Pursuant To NY DCL
§276,  As 5.6 Million Was Taken Directly Out Of The Debtor's Bank Account To
Purchase A Residential Condominium Transferred To A Corporation With No Prior
Business Dealings And Owed No Antecedent Debt</u>

33.    Defendant admits the material facts confirming the diversion of the

Debtor's funds, the lack of a business purpose between Defendant and the Debtor, and the lack

of an antecedent debt owed to Defendant. Motion at ¶¶52-61.  The Opposition proffers an

alternative explanation for the transaction which it claims raises a triable issue of fact.  However

the explanation is without evidentiary support, incomplete, and supported only by the argument

of counsel.  When a party offers facts to support his contention asserting "an issue of fact

remains" to oppose summary judgment, they must comply with Rule 56(e). *Federal Republic of

Germany v. Elicofon*, 536 F. Supp. 813, 822 (E.D.N.Y 1978).  "This rule provides that when

affidavits are used to support or oppose a summary judgment motion, they 'shall be made on

personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

show affirmatively that the affiant is competent to testify to the matters stated therein.' With

respect to exhibits, the second sentence of Rule 56(e) states: 'Sworn or certified copies of all

papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.'

These requirements are mandatory for '(only) in this way may the underlying objective of the

summary judgment procedure-'to discover whether one side has no real support for its version

of the facts'-be satisfied." *Id* at 822 citing to *Dressler v. MV Sandpiper*, 331 F.2d 130, 134 (2d

Cir. 1964), quoting *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d

Cir. 1962).  See *Raskin v. Wyatt Company*, 125 F.3d 55, 66 (2d Cir. 1997) (holding court need

consider only admissible evidence when considering summary judgment motion).

        34.     No affidavit is submitted authenticating or laying an evidentiary

foundation for any of the documents in support of the explanation offered in the Opposition.[2]

Defendant's Exhibits 2, 5, 6 and 10 consist of single sheets of paper lacking any foundation,

authentication and in fact appear to be incomplete.  See *Vigilant Ins. Co. v. M/T Clipper Legacy*,

656 F. Supp. 2d 352, 354 n.1 (S.D.N.Y. 2009) ("Generally, for a document to be admissible for

purposes of a motion for summary judgment, it must be authenticated by, and attached to, an

affidavit meeting the requirements of Federal Rule of Civil Procedure 56(e)."), and as such, "not

competent evidence in opposition to summary judgment,". *Patterson*, 375 F.3d at 222.

Defendant's Exhibit 1, the Consulting Agreement, which Defendant references to claim fees

owed under Section 2, is not properly authenticated and incomplete without the referenced

documents (Article III Notice or the Operating Agreement).  The reliability of the consulting

agreement is questionable as other documents submitted to the Opposition references a

consulting agreement with different terms.[3]  Defendant's Exhibit 8 submits alleged bank

statements of the Debtor, some complete others incomplete, but all redacted to conceal the flow

of funds. No explanation is provided for the redaction.  Defendant's Exhibit 9 is an unsigned

Consulting Agreement without exhibits.  See *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS

9237, *13 (D. Conn. 2004) (on motion for summary judgment, incomplete documents and those

not authenticated are properly stricken regardless if they can be authenticated at time of trial)

---

[2] See Motion to Strike and Evidentiary Objections to Exhibits Submitted in Support of Defendant's Opposition to Motion for Summary Judgment, filed concurrently herewith.

[3] Also, Plaintiff has submitted as Plaintiff's SSOF #23, admissible evidence that establishes Parmar created fake consulting agreements at the Debtor, falsifying signatures to cover for his diversion of funds. (See Affidavit of J. Nolan, filed January 6, 2021, attaching the deposition testimony of Howard Schoor as Ex. O)  Mr. Schoor confirms he was never a consultant and never signed the consulting agreement bearing his signature.  Any consulting agreement submitted without a proper foundation is suspect.

Plaintiff moves to strike all the exhibits for lack of authentication, foundation, completeness, and unreliability.

B.    Defendant's Alternative Explanation, That Parmar Was Entitled To Collect 9 Million In Wages And Bonus On Behalf Of FUH, Is Contradicted By The Documents

35.    As set forth in the Opposition, "It is Defendant 2 River Terrace's position, based on the exhibits, that at the time of the transaction in question Parmar was owed both salary and bonuses under the consulting agreement in effect with FUH.  Parmar was at the time, the salaried CEO of CHT.  He was also a majority shareholder owner of both FUH and the Debtor entities." (Opposition, ¶32) Parmar elected to receive his bonus in shares (See SSOF E; Defendant's Exhibit 4) which shares were worth in excess of 9 million dollars. (See SSOF F; Defendant's Exhibit 5) The argument simply does not withstand scrutiny.

36.    First, the reference to Parmar's compensation in the AIM public document contradicts the document Defendant submitted to the Court. Defendant's claim of an entitlement of millions of dollars in bonuses is contradicted by Section 6.1(a) of the AIM document which references a consulting agreement with a flat fee bonus of "up to $175,000, payable at discretion of the board".  (See Defendant's Exhibit 3, pg. 124).  Yet, the consultation agreement submitted as Defendant's Exhibit 1, references a consulting agreement with a different salary amount and different bonus. The documents contradict one another.

37.    Second, according to the Opposition, "EBITDA totaled in the millions of dollars in both 2014 and 2015" (See Defendant's SSOF C; Exhibit 2).  However, the consulting agreement attached as exhibit 1 references a percentage of "EBITA" not "EBITDA".  Even ignoring this inconsistency, such variable is **less** the amount of funding obtained whether by issuing equity or borrowing funds…"  (See SSOF B, Exhibit 1)   No evidence was submitted on

ht e issue of funding.  There is no ability to determine if any amount was due assuming arguendo it is true.

38.    <u>Third</u>, if Parmar elected to take his bonus in shares (B-2 Units) as claimed in the Opposition (Defendant's SSOF E; Exhibit 4), then his diversion of cash was entirely improper.

39.    <u>Lastly</u>, the Debtor's books and records refute an antecedent debt satisfied by the diversion of the 5.6 million dollars on February 19, 2016; "there is a lack of any documentation, invoices or journal entries evidencing an antecedent debt satisfied as a result of the diversion of $5,603,408.81 for the acquisition of the Condominium Unit" (Plaintiff's SSOF #14; Affidavit of D. Jones, ¶6).   5.6 MM went out of the Debtor's estate with no equivalent diminishment of the Debtor's liabilities.[4]  Similarly, the Motion satisfies the badges of fraud that imply a conveyance was made with fraudulent intent.

(i)    The lack or inadequacy of consideration

40.    As set forth above, the explanation proffered in the Opposition as to "fair consideration" is without evidentiary support and the Debtor's books and records refute the argument.  The Opposition remarks that when "tainted" funds are commingled with "untainted funds", a factual issue precluding summary judgment is raised. (Opposition ¶33) No legal authority is cited for such proposition.

41.    No evidence is submitted of commingling funds and the money trail is clear.  The first withdrawal for $545,000 out of the Debtor's M&T Bank Account went directly to escrow.  The second withdrawal for $5,058,408.81, made on February 19, 2016 out of the

---

[4] .    "Actual fraudulent intent" under NYDCL § 278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design." 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§ 85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff*, 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930).

Debtor's M&T Bank Account went to the Debtor's IOLA account at Robinson Brog, and was exchanged <u>same day</u> for a cashier's check in the exact amount and placed in escrow.  An Interest on Lawyers Account ("<u>IOLA</u>") is an unsegregated interest-bearing deposit account… for the deposit by an attorney of "qualified funds".  NY Jud. Law §497(1).  "Qualified funds" are monies received by an attorney in a fiduciary capacity from a client or beneficial owner. The Debtors' funds sitting in an IOLA account are the funds of the Debtor as they are not property of the law firm who has no dominion or control over them.  See *State Farm Mut. Auto Ins. Co. v. Grafman,* No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017).  Argument of counsel do not raise triable issues of fact.

    (ii)  The family, friendship or close associate relationship between the parties;

  42.  The Opposition does not dispute that Parmar controlled and operated the Debtor as its majority shareholder and CEO.  Parmar transferred the Condominium to Defendant, an entity he owned and solely controlled.  Clear evidence of fraud exists where the principals of the transferor are also principals of the transferees, such that "the same individuals had ownership and control over the conveyed properties, before and after the conveyances".  See *Machado v A. Canterpass, LLC*, 115 A.D.3d 652, 654, 981 N.Y.S 2d 758 (2014)  This factor is satisfied and weighs heavily in favor a finding an intentional fraudulent conveyance.

    (iii)  The retention of possession, benefit or use of the property in question

  43.  Parmar and his girlfriend, their parents, and their cousins occupied the Condominium Unit. (See SSOF #9).  This fact is not disputed by the Opposition other than to boldly assert that the Condominium Unit "was the property of Defendant 2 River Terrace" and Parmar had every right to occupy it. The retention of the Debtor's property by an entity controlled by the Debtor's CEO is clear.

> (iv)    The financial condition of the party sought to be charged both before and after the transaction in question

44.     The Opposition asserts that Parmar's personal finances have nothing to do with this element of intentional fraud.  However, it is undisputed that Parmar was the catalyst for the Transfer and it is an admitted fact that Parmar created, owned, and placed title to the Condominium Unit in Defendant, a single entity LLC.  Defendant's explanation in the Opposition, that "many owners in New York place title to real property in an LLC", does not raise a factual issue.  How many of those transactions involved an owner who acquired the real property by diverting monies from his employer (SSOF# 4, 7), in an undocumented compensation award (SSOF# 12, 13, 14), and uses employer's monies to pay back the personal loans?  (SSOF ##21, 22, 24, and 25) Moreover, how many of these real property acquisitions are by an owner that did not turn a profit 4 years consecutively (2015, 2016, 2017 and 2018) and filed bankruptcy with a net cumulative loss not less than  -$133,398,156.00? (See SSOF## 30, 31, 34)  The Opposition claims the Debtor was flush with cash in 2016, but no credible evidence is submitted to rebut the massive cumulative losses set forth in the Motion.

> (v)    The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) The general chronology of the events and transactions under inquiry.

45.     As of period ending 2015, the Debtor carried a cumulative net loss from the prior year 2014 of -$82,043,457, and stated a loss for the end of 2015 of -$11,392,467. (SSOF# 30) The cumulative loss at the end of 2015 was -$94,135,177.  In 2015, the Debtor had engaged in a series of synthetic acquisitions (companies purchased for tens of millions of dollars which had no operations, business, assets or employees).  (SSOF ## 28, 29, 32, 33)  The Loss for 2016 was -$39,007,282  (SSOF# 31)  In December 2015, a $200,000 judgment was

recorded against the Debtor (SSOF# 35), and in February 2016, the Debtor paid 28MM for yet another company with no assets, employees or business.  (SSOF# 32)  The Opposition offers no admissible evidence to rebut these facts.  Parmar as the controlling shareholder and CEO of the Debtor orchestrated the transfer of 5.6MM out of the Debtor's M&T Bank Account during this turmoil.  The Debtor incurred losses each year in excess of 10 million dollars and it was controlled by a CEO who could divert millions from the Debtor by issuing a single email.  (See SSOF#4, 6 and 25)

C.    The Argument To Set-Off the Debts Of Four Corporations To Support a Claim Of "Fair Consideration" Is An Invitation the Court Should Decline

46.    The Motion submits the sworn Affidavit of Dan Jones who investigated the Debtors' books and records and concluded "there is a lack of any documentation, invoices or journal entries to support a stated business purpose for the acquisition of the Condominium Unit", i.e. to pay any debt. [Affidavit of D. Jones, Dkt 21, ¶6] The Opposition admits the fact that the Transfer satisfied no debt between the Debtor, transferor and the Defendant, transferee. (SSOF #11-14) At this juncture, no argument of "fair consideration" can made unless one employs the legal fiction that the transfer of title to the Condominium Unit to Defendant, 2 River Terrace, satisfied an obligation to a different LLC.

47.    The Opposition attaches a consulting agreement (Defendant's Ex. 1) for the proposition a legitimate debt was owed to  FUH, a Delaware limited liability company who is not one of the Debtors herein, as owed by Constellation Health, LLC, a Delaware limited liability company, who is also not one of the Debtors herein. As the argument goes, the Debtor transferred title to the Condominium Unit valued at 5.45 MM to Defendant, in satisfaction of an obligation Debtor owed to Constellation Health, LLC, which owed FUH who owed Defendant. Since the multifaceted transaction would enrich the same majority shareholder of each of the

aforementioned limited liability companies, Paul Parmar,[5] the Court should align and set off

four sets of corporate obligations against one another (the Debtor, Constellation Health LLC,

FUH, and Defendant 2 River Terrace). The Opposition asks this Court to employ a set-off.

48.    Section 553 of the Bankruptcy Code permits the set-off of mutual debts

that arose before the commencement of the case. *In re Bennett Funding Group, Inc.*, 146 F.3d

136, 138-39 (2d Cir. 1998). The "Bankruptcy Code does not establish an independent right to

set-off, but section 553 does preserve any right of set-off that may exist under applicable non-

bankruptcy law." *In re Lehman Brothers Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y.,

2010). Section 553 applies "whenever a creditor seeks to exercise any purported set-off right-

including one created by contract-in a case under the Bankruptcy Code." However, Section 553

imposes "additional restrictions on a creditor seeking set-off *that must be met to impose a set-off*

*against a debtor in bankruptcy*." To be eligible for set-off under section 553, "(1) the amount

owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must

also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor

must be mutual." Section 553 sets forth in pertinent part:

> "Except as otherwise provided in this section and in sections 362 and 363 of this
> title, this title does not affect any right of a creditor to offset a mutual debt owing
> by such creditor to the debtor that arose before the commencement of the case
> under this title against a claim of such creditor against the debtor that arose before
> the commencement of the case…." *In re SemCrude*, 399 B.R. 388, 399.

The authorities are also clear that debts are considered "mutual" only when they are due to and

from the same persons in the same capacity. Put another way, mutuality requires that each party

must own his claim in his own right severally, with the right to collect in his own name against

the debtor in his own right and severally. Because of the mutuality requirement in section 553(a),

---

[5] No board resolution, 1099, or W-2, is submitted in support of the argument that any income was realized by
Parmar.

courts have routinely held that triangular set-offs are impermissible in bankruptcy. Moreover, because each corporation is a separate entity from its sister corporations, a subsidiary's debt may not be set-off against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances. Allowing a creditor to offset a debt it owed to one corporation against funds owed to it by another corporation-even a wholly-owned subsidiary- would thus constitute an improper triangular set-off under the Code. *In re SemCrude*, 399 B.R. 388 at 393-394 (Bankr. D. Del. 2009). See *In re Lehman Bros.*, 458 B.R. 134, 2011 Bankr. LEXIS 3714 (Bankr. SD NY, 2011) (the court agrees with the *SemCrude* court — triangular set-off is not (and never was) permitted under the Bankruptcy Code).

49.     Although the Bankruptcy Code does not define "mutuality," a majority of courts that consider the issue have held: debts are mutual only if they are due to and from the same persons in the same capacity. It is also widely accepted that "mutuality is strictly construed against the party seeking set-off. The effect of this narrow construction is that 'each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'" Id. at 396.  Even if there were documents offered to the Court to document the claim of a legitimate debt owed by the Debtor, to do so is an improper triangular set-off and not supported by the Bankruptcy Code.

D.     <u>With respect to Constructive Fraud Cause of Action, Pursuant To NY DCL §273-a, Defendant's Argument That The Application Of Section §273-a Can Only Be Asserted By The Plaintiff Who Docketed The Judgment Against the Debtor Is Simply Wrong</u>

50.     As set forth in the Motion (¶50), "Sections 273 and 273-a provide alternate theories of constructive fraud: § 273 "applies to transfers that render a debtor insolvent, and the existence of an action or judgment is irrelevant," while § 273-a "applies where there is an action pending or a judgment already docketed, but there is no requirement that the transfer rendered the debtor insolvent." *Cadle Co. v. Newhouse*, No. 01 CIV. 1777

(DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at *5-6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) (emphasis added). In effect, § 273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency." [Motion, pg. 11, ¶50] The Opposition agrees that a docketed judgment creditor existed against the Debtor in December 2015 and went unpaid up to and through the Petition Date. (SSOF #35) If fair consideration is lacking for the Transfer, the Transfer was fraudulent per se pursuant to §273-a (the insolvency of the Debtor being irrelevant to a finding of liability). However, without citing to any legal authority, Defendant contends that 273-a, is restricted to use by only the party who docketed the judgment. (Opposition, ¶28) The assertion is erroneous.

51.     The rationale behind the enactment of NY DCL 273-a, is to stigmatize transfers of debtors' assets made without consideration when a docketed judgment creditor exists. *Orr v. Kinderhill Corp.*, 991 F.2d 31, 34-35(2nd Cir. 1993) Three elements must exist in order to support a claim under § 273-a: (1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for money damages or a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment. *In re Fair*, 142 Bankr. 628, 631 (Bankr. E.D.N.Y. 1992); *Republic Insurance Co. v. Levy*, 329 N.Y.S.2d 918, 919 (Sup. Ct. Rockland 1972); *Schoenberg v. Schoenberg*, 113 Misc. 2d 356, 449 N.Y.S.2d 137, 139, mod. on other grounds, 456 N.Y.S.2d 14 (Sup. Ct. Nassau 1982). *Dixie Yarns v. Forman*, 906 F. Supp. 929, 935 (S.D.N.Y. 1995)

52.     The Opposition ignores the language under the Bankruptcy Code and case law. Under Section 544(b)(1), "the Trustee succeeds to the rights of an unsecured creditor in existence at the commencement of the case who may avoid the transfer under applicable law". COLLIER OF BANKRUPTCY §544.06[1] (Richard Levin & Henry J. Sommer eds., 16th ed).

The bankruptcy statute is clear on its face.  Similarly, in *Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71 (E.D.N.Y. 2007), the debtor made a conveyance without fair consideration at the time of the transfer a judgment was docketed.  The requirements of DCL§273-a, were satisfied and the chapter 7 Trustee entitled to recover the transfers. Id at 84. In *Banner v. Lindsay (In re Lindsay)*, 2010 Bankr. LEXIS 1554, 27-28 (Bankr. S.D.N.Y. 2010), the Chapter 7 trustee was entitled to summary judgment on the DCL§273-a cause of action, as judgment docketed  against debtor in favor of creditor and debtor thereafter transferred monies to benefit debtor while leaving the judgment creditor unsatisfied.  In *Dixie Yarns*, on summary judgment, the district court awarded judgment under 273-a in favor of the successor in interest to the creditor who docketed judgment. *Dixie Yarns v. Forman*, 906 F. Supp. 929, 932 (S.D.N.Y. 1995).   §273-a, was enacted to discourage fraudulent transfers of debtors' assets that render judgments in favor of plaintiffs meaningless. Id at 935.  The diversion of 5.6 MM in funds and Transfer to Defendant 2 River Terrace in February 2016, depleted the estate and rendered the docketed judgment meaningless.

E.     The Opposition Does Not Dispute Legal Authorities In The Motion That A Transfer Between Self-Interested Parties, Without Regard To Actual Intent Of The Transferor, Is Made Without Good Faith And Constructively Fraudulent.

53.     The Motion at pg. 18, Paragraph C, sets forth the statute and supporting case law that the "fair consideration" under NY DCL §273-a, consists of two elements; good faith and fair consideration.  The element of fair consideration exists when, in exchange for property or an obligation, "as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" (Debtor and Creditor Law § 272 [a]).  Defendant fails both prongs of the test.

54.     Defendant makes no effort to refute existing case law or the conclusion that self-interested transactions fail as a matter of law under NY DCL §273-a, as the

manipulation of corporate assets by those in control of a corporation such as officers, directors or controlling shareholders reflects "bad faith" and deprives creditors of fair consideration. Rather, the Opposition in trying to justify the theft of 5.6 MM from the Debtor's bank account, confirms to the Court that the fact pattern before it involves a *self-interested* transaction.  The money was taken and the Transfer effectuated by the Debtor at the behest of its CEO and controlling shareholder to an entity, controlled and owned by that same CEO, Paul Parmar. (Opposition, pg. 18, ¶32)[6]  Self-interested transfers are not made in good faith and violate NY DCL §273-1.  A transfer is still constructively fraudulent in the absence of good faith on the part "of both the transferor and the transferee." at 303 (emphasis added), quoting ; see *Sardis v Frankel*, 113 AD3d 135, 142, 978 N.Y.S.2d 135 (1st Dept 2014) ("Fair consideration' ... is not only a matter of whether the amount  given for the transferred property was a 'fair equivalent' or 'not disproportionately small,' but whether the transaction is made 'in good faith,' an obligation that is imposed on both the transferor and the transferee.").  As germane to the present discussion, "[a]n insider payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." *Am. Media, Inc. v Bainbridge & Knight Labs., LLC*, 135 AD3d 477, 478, 22 N.Y.S.3d 437 (1st Dept 2016), citing *EAC of N.Y, Inc. v Capri 400, Inc.*, 49 AD3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept 2008)  ("The requirement of good faith is not fulfilled through preferential transfers of corporate funds to directors, officers or shareholders of a corporation that is, or later becomes, insolvent, in derogation of the rights of general creditors."); *Am. Panel Tec v Hyrise, Inc.*, 31 AD3d 586, 587, 819 N.Y.S.2d 768 (2d Dept 2006)

---

[6] "Courts view intrafamily transfers without any signs of tangible consideration as presumptively fraudulent." *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 660-661(E.D.N.Y. 2008) citing to *United States v. Mazzeo*, 306 F. Supp. 2d 294, 311 (E.D.N.Y. 2004) (quoting *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999)).

; *P.A. Bldg. Co. v Silverman*, 298 AD2d 327, 328, 750 N.Y.S.2d 13 (1st Dept 2002). The

Transfer was made without "good faith" and violates §273-a.

F.     Repayment Of An Antecedent Debt Constitutes Fair Consideration under § 273-a, Unless
       The Transferee Is An Officer, Director Or Majority Shareholder Of The Transferor.

             55.    Similarly, NY DCL law prohibits self-interested transactions between the

transferor and transferee and that it can qualify as satisfying a valid "antecedent debt". The

phrase "fair consideration," as used in § 273-a, is defined by § 272 of the Debtor and Creditor

law, which provides:

> "Fair consideration is given for property, or obligation,
>
> a.     When in exchange for such property, or obligation, as a fair equivalent therefor,
>        and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b.     When such property or obligation is received in good faith to secure a present
>        advance or antecedent debt in amount not disproportionately small as compared
>        with the value of the property, or obligation obtained. " *Dixie Yarns v. Forman*,
>        906 F. Supp. 929, 936 (S.D.N.Y. 1995).

"P 272 contains two elements: *fair equivalent value*, and *good faith*. Reading § 273-a, and § 272

together, creditors asserting § 273-a claims "have two separate approaches to avoid transfers.

Under the first, they may void any transfer made without fair consideration regardless of the

intent of the parties. Under the second approach, even if there was fair consideration, the party in

question must prove that the consideration was taken in good faith. " *HBE Leasing Corp. v.

Frank*, 837 F. Supp. 57, 60 (S.D.N.Y. 1993); See also *Southern Industries, Inc. v. Jeremias*, 66

A.D.2d 178,  [**19]  411 N.Y.S.2d 945, 948 (2d Dept. 1978); *In re Checkmate Stereo and

Electronics, Ltd*., 9 Bankr. 585, 617 (Bankr. E.D.N.Y. 1981), aff'd, 21 Bankr. 402 (E.D.N.Y.

1982)….either approach is legally sufficient to sustain a § 273-a claim." Id at 936-937.

In *Atlanta Shipping Corporation, Inc. v. Chemical Bank*, 818 F.2d 240, 248-49 (2d Cir. 1987),

the Second Circuit considered the meaning of "fair consideration" under § 272, and held: "In

general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an

officer, director, or major shareholder of the transferor."  In *Dixie Yarns v. Forman*, 906 F. Supp. 929 (S.D.N.Y 1995), the court following the decision in *Atlanta Shipping Corporation*, infra, similarly granted summary judgment against defendant, transferee who were also directors, or major shareholders of the transferor. Id at 937.  Defendant's explanation, even if supported by admissible evidence, does not alter the undisputed fact that the Transfer of title to Defendant 2 River Terrace by the Debtor was *a self-interested transaction*;  a transfer by Parmar as CEO of the Debtor for compensation due FUH (an entity Parmar was an officer, and controlled as a majority shareholder; Opposition ¶32) with title transferred to Defendant, 2 River Terrace, to an entity Parmar, controlled,  owned and solely managed (Defendant's SSOF H & J).  Summary judgment is warranted as "self-interested" transactions do not satisfy an "antecedent debt" and do not constitute "fair consideration" under § 273-a.

G.    <u>With Respect To Constructive Fraud Cause Of Action Pursuant To NY DCL §273, 274 And 275, Defendant Offers No Admissible Evidence To Rebut The Presumption Of Insolvency Or The Evidence Presented In The Motion of Massive Losses</u>

56.    As set forth in the Motion at ¶67, the Debtor is presumed to be insolvent if the Transfer was without fair consideration. Under N.Y. Debt. & Cred. Law § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan),* 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000); *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016).

The Debtor's financial records indicate a consistent operating loss evidencing the Debtor was not viable. The Debtor operated at a loss before the Transfer and for every year until its demise on March 16, 2018.  As of December 31, 2017, The Debtor had accumulated a staggering

cumulative loss of -$133,398,156, evidencing it carried negative earnings year over year since 2015 (See SSOF ##30, 31 34).

57.     Cumulative negative retained earnings indicates the company was consistently piling up losses year after year which it could not cover.  See *Lanik v. Smith (In re Cox Motor Express of Greensboro, Inc.)*, 2017 Bankr. LEXIS 233, 26 (Bkrtcy, MD NC, 2017) (These facts tend to show that Debtor was in serious financial difficulty and insolvent on the date of the first transfer); *In re F.H.L., Inc*., 91 B.R. 288, 297(Bkrtcy NJ, 1988) (income tax returns and financial statements indicating a negative net operating loss are evidence of insolvency).  New York DCL § 274 permits a trustee to avoid a transfer where, among other things, the movant shows that the transfer left the transferor in "a financial condition short of equitable insolvency."  *Manshul*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *54 (citing *Moody*, 971 F.2d 1056, 1070 (3rd Cir. 1992).  The test is aimed at transfers that leave the transferor, such as a corporate or other entity, technically solvent but doomed to fail.  See *Moody*, 971 F.2d at 1070, n.22.

58.     The Motion shifted the burden to Defendant to come forth with admissible evidence that the Debtor was profitable, adequately capitalized and/or a going concern.  The Opposition submitted no evidence: sworn affidavits, authenticated financial statements, or expert declarations.

H.      Plaintiff Is Entitled to a Monetary Award to Satisfy the Encumbrance against the Condominium Unit, Charges the Debtor Paid While the Unit Was Misappropriated As well As an Award of Its Attorney's Fees.

59.     Plaintiffs also seeks a money judgment against Defendant to satisfy the encumbrance/lien placed against the Condominium Unit  based on Defendant/Parmar's failure to pay the common charges associated with its maintenance as well as attorney's fees incurred by the RBM.

1.  Defendant Is Liable For the Amount of the Encumbrance Against the Condominium Unit

60.    While a defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud, the statute provides for a money judgment in instances where the asset has depreciated or been encumbered .  *Cadle Co., supra*, at 73, citing to *Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc*., 226 A.D.2d 1056, 641 N.Y.S.2d 947, 948 (N.Y. App. Div. 1996) ("As a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance."; *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17, 24 (N.Y. App. Div. 1986).  Money judgments are available where assets have been sold and commingled with a transferee's assets or when the grantee has disposed of the wrongfully conveyed property or depreciated it." *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, No. 11 Civ. 3489 (JMF), 2014 U.S. Dist. LEXIS 16755, 2014 WL 516695, at *2 (S.D.N.Y. Feb. 10, 2014).  To that end, courts may impose money judgments against transferees in the amount of the depreciated or encumbered property. See *United States v. Bushlow*, 832 F. Supp. 574, 582-83 (E.D.N.Y. 1993) (holding transferee son liable for mortgage taken out on conveyed house).  In the present case, the Condominium Unit has amassed debt of $455,493.

61.    Alternatively, under New York law, a creditor may also recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003); see also *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) ("The New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against

26

parties who participate in the fraudulent transfer of a debtor's property and are transferees of the

assets and beneficiaries of the conveyance.")  Plaintiff has met this standard.[7]

        2.    The Diversion of the Debtors Funds, Misuse of the Debtor's Credit
            Cards, And lack of Credible Explanation Support The Award of
            Attorney's Fees In Favor of The Trustee

62.    Pursuant to §276-a, attorney's fees are awarded against a defendant who is

the grantee of a fraudulent conveyance when the court makes a finding that defendant was

aware of and participated in the actual fraud.  See *Carey v. Crescenzi*, 923 F.2d 18, 20 (2d Cir.

1991).  New York cases support the proposition that a claim for attorney's fees under § 276-a,

may also be made pursuant to NY DCL § 273-a.  *Dixie Yarns v. Forman*, 906 F. Supp. 929, 938

(S.D.N.Y 1995).  Defendant not only participated in-but specifically orchestrated, the

transaction in question resulting in the hijacking of 5.6 MM from the Debtor's estate for his

personal gain.  Parmar/Defendant claims the Condominium Unit was his personally property,

but admits he utilized the Debtor's credit cards and misappropriated funds to pay for its upkeep.

(SSOF #15, 16 and 17)  Parmar knew of the docketed judgment in favor of the claimants

McBride and Nottingham in 2016 (SSOF #35) which remains unpaid to this day (SSOF#35).

The Debtor became massively more insolvent day to day ultimately stating a net income (loss)

for 2017 of -$20,492,714 and retained cumulative Income (loss) of -$133,398,156. (See SSOF

#34)  As the Debtor drowned, the CEO of the Debtor diverted assets to pay his personal loans

(SSOF#21-25), misused credit cards and falsified the Debtor's records to create at least one fake

vendor agreement to cover his tracks. (See SSOF #23; Affidavit of J. Nolan, ¶2)  Creditors of

the estate should not bear the burden of costs for clearly fraudulent conduct.

---

[7] The exact amount of the lien by the RBM has been submitted by an updated ledger submitted from RBM as the
Condominium Unit continues to languish in an unpaid status.

## **CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order substantially in the form as attached to the Affidavit of Jeffrey Nolan, as **Exhibit N**.


Dated:  January 6, 2021                 Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777

Counsel For Plaintiff, the Liquidating Trustee